## DOOGAN v. ELLIOTT.

1. **Executor:** DISCHARGE OF: LIABILITY. Upon a verbal order of the county judge, the executor was authorized to pay into his hands any sums in his hands belonging to the estate or legatees thereof, and the judge was liable upon his bond for their proper disbursement.

2. ——: ——: VERBAL ORDER. When the county judge received the money and discharged the executor, the latter could not be held liable to the legatees until the order of discharge was in some manner impeached or set aside.

*Appeal from Jasper Circuit Court.*

FRIDAY, JUNE 9.

THE petition in substance alleges that on the 10th day of February, 1863, the defendant was duly appointed by the

probate court executor of the estate of Thomas Doogan, deceased, and that, as such executor, he received a large amount of money and property belonging to the estate, of which, after paying all claims against the estate, there remained for distribution the sum of $1019.28; that Thomas Doogan made a will, containing the following bequest: "I give and bequeath to Patrick Doogan, my brother, one-fourth of my estate at my death, residence not known. Provided said Patrick Doogan should not be found, I want the above named Anna Mahan and Mary Bedford to have Patrick Doogan's share of my estate divided equally between them;" that on the 28th day of October, 1868, the defendant was ordered by the probate court to make distribution of the $1019.28, remaining in his hands, to the legatees named in the will; that at the time of the making of the will and of the death of Thomas Doogan, plaintiff was in the State of Georgia, and his residence was unknown to Thomas at his death, and to the defendant up to 1873, and the death of Thomas and plaintiff's rights under the will were unknown to him until 1873; that defendant not being able to find petitioner, held the amount due him, as trustee for him, and has so continued to hold the same to this time. Plaintiff asks judgment for $500 and costs.

The answer denies all the allegations of the petition, and, in the fifth count, alleges as follows: "Defendant further answering says, that on the 10th day of February, 1863, he, in connection with J. A. Killen, was appointed executor of the estate of one Thomas Doogan, deceased; that immediately upon such appointment being made, they entered upon their duties as such executors and settled up all matters pertaining to the estate; that by the terms of the will of said Thomas Doogan, it was provided that Anna Mahan, Mary Bedford, Patrick Doogan, and this defendant, should each receive a fourth interest of said estate; that it was further provided that if said Patrick Doogan, whose place of residence was then unknown, should not be found, the share going to him should be divided equally between the legatees, Anna Mahan and Mary Bedford; that when said estate had been settled

up, and more than five years had elapsed since the appointment of this defendant as one of the executors thereof, no trace of said Patrick had been or could be found, and that, thereupon, the Probate Court of Jasper county, Iowa, ordered and directed (by verbal order, as this defendant now learns, but supposed previously it was of record), this defendant to pay into the court, for the use of said Anna Mahan, and Mary Bedford, and the other legatees, the portion that was originally intended for Patrick Doogan; that this defendant, acting under the express order and direction of the Probate Court, did previous to his discharge as such executor pay into the court the full amount due to said Patrick, and take the receipt of the probate judge for such payment; that the Probate Court refused to discharge him, or release his bondsmen until such payment was made, and gave this defendant a peremptory order to pay said legacy into court; that this defendant, in all things pertaining to said Patrick's share, acted under the orders of the court, and only paid the money into court after being expressly ordered and directed so to do by the judge thereof; that such payment made by this defendant under the direction of the court operated as a full release of this defendant from any liability on said legacy, or any liability to this plaintiff; and that if said money has not been paid over to the remaining legatees as directed in said will, the same is now in the Probate Court subject to the order of said Patrick Doogan. Defendant further says, "that upon the payment of said money into court, as ordered, he was discharged on the 28th day of October, 1868, from all liability as such executor; and more than five years having elapsed since his discharge, the statute of limitations has run thereon."

The plaintiff demurred to this count of the answer, upon the following grounds: "Because the verbal order of the county judge is no defense. The county judge had no power to make such order."

The court sustained this demurrer. The cause coming on for trial, the plaintiff proved that on the 20th of December, 1862, the defendant, as special executor of the estate of Thomas Doogan, filed an inventory and appraisement amounting to

$894.10, and that on December 24, 1862, the special executors, James Elliott and J. A. Killen, filed an additional inventory amounting to $258.19; that on the 10th of February, 1863, said executors filed a report of the sale of the personal property of the estate showing that the same amounted to $1101.72; that on the 28th day of October, 1868, James A. Elliott filed his report showing that he had received of the assets of the estate $1461.79, and had paid out $442.51, leaving for distribution among the legatees $1019.28; and that he had paid to the legatees as follows: to Anna Mahan, $101.00; to Mary Bedford, $155.68; to James Elliott, $217.86. Upon the filing of this report defendant asked that full settlement be made, and that he be discharged as executor.

The plaintiff also introduced the following order of discharge, signed by O. C. Howe, county judge, dated Oct. 28th, 1868: "Settlement being had with James Elliott, executor of said estate, upon the basis of the foregoing report, it is found that the amount remaining subject to distribution, after deducting expenses of administrator, and payment of all charges legally allowed against the estate, is one thousand and nineteen dollars and twenty-eight cents, and the same is ordered to be distributed in equal shares to the several legatees as follows:

To Patrick Doogan..............................$254.82
To Anna Mahan................................ 254.82
   Of which she has received.................. 101.00
   Leaving unpaid to her...................... 153.82
To Mary Bedford............................. 254.82
   Of which she has received.................. 155.68
   Leaving unpaid............................ 99.14
To James Elliott............................. 254.82

And the said James Elliott is discharged from further duty as executor of said estate."

The defendant proved that the county judge exacted of him ten per cent interest on the money in his hands, and that, being unwilling to pay interest, he paid all the money which he had in his hands as executor to Judge Howe, on the 28th day of October, 1868, and received a discharge, signed by the

county judge and bearing the probate seal, as follows: "In County Court, October 28th, 1868. Settlement having this day been made with James Elliott, executor of the will of Thomas Doogan, deceased, and the balance found due against said executor being fully adjusted, he is hereby discharged from all further duty and liability as such executor. Witness my hand and official seal the day above written."

The defendant offered to show that Judge Howe, the probate judge, ordered and directed him to pay the money belonging to the estate into court, and make full and final settlement as such executor with the probate court. Upon plaintiffs' objection that it was incompetent thus to contradict or add to the record, this evidence was excluded. The court rendered judgment for plaintiff for $270.20. Defendant appeals.

*R. A. Sankey*, for appellant.

One who, having property in the hands of another, stands idly by and allows that other to dispose of it in good faith, in such a manner that a claim for the property cannot be enforced against him without injury, is estopped to make the claim. (*Hayes v. Steele*, 32 Iowa, 44; *Williams v. Allison*, 33 Id., 286; *Chamberlin v. Robertson*, 31 Id., 408; *Cunningham v. Cassidy*, 17 N. Y., 282.) Where a trustee pays the trust fund by order of the court, he is indemnified by the order and does not need a release. (Perry on Trusts, Chap. 32, ¶ 924.) The plaintiff's right of action arose when he claimed the defendant had misappropriated his money. (*Wheelhouse v. Bryant*, 13 Iowa, 160.) Money due a creditor may rightfully be paid by an administrator into the county court. (*Wright & Co. v. Harris*, 31 Iowa, 272.) The rights of a legatee are subordinate to those of a creditor. (2 Redf. on Wills, 448.)

*Smith & Wilson*, for appellee.

Administrators claiming merely as such, cannot by lapse of time merely set up title to the general residue. (*Arden*

*v. Arden*, 1 Johns. Ch., 314.) An administrator or executor is a trustee, accepting the trust voluntarily, and so having no right to complain of the limitation of the trust. (*Higbee v. Bosan*, 8 Pick., 484.) The statute of limitations will not, in equity, bar an account between a trustee and *cestui que trust*, so long as the trust subsists and is mutually acknowledged. (*Kimball v. Ives' Administrator*, 17 Vt., 430.)

DAY, J. In *Wright & Co. v. Harris*, 31 Iowa, 272, it was held that a county judge is authorized to receive money paid 1. EXECUTOR: by an executor upon claims filed and allowed against discharge of liability: the estate, and that for a failure to pay the same over to the parties entitled thereto, he and his sureties would be liable upon their bond. In that case Harris, in his official capacity as county judge, received of the executrix of an estate $217, in payment of a claim due Wright & Co. from the estate. While the money was in his hands he made a final settlement with the administratrix, and ordered her to be discharged. Upon the expiration of his term of office he failed to pay over the money to his successor, or to account to any person therefor. He and his sureties were held liable for the amount upon the ground that it was his official duty to receive the money. No distinction, in this respect, can be drawn between money due to a creditor and money belonging to a legatee. The reasoning of the court, in the case above cited, is as applicable to the latter case as to the former. In fact we do not understand appellee to claim that the probate judge had no authority to receive this money; but his position, we understand to be, that defendant can be discharged from liability only upon an order for payment to the probate court duly entered of record. And from the ruling of the court upon the demurrer, and in rejecting the testimony offered, we understand this to have been its view of the law. The position assumed we believe to be erroneous.

Section 2419 of the Revision provides that if the executor fail to make payment of any kind in accordance with the order of the court, he and his sureties may be summoned to appear to show cause for the failure. And section 2420 pro-

vides that if no sufficient cause be shown, the court shall render judgment on the bond of the executor, and shall issue execution accordingly. Now it may be that the court could, by execution, enforce obedience only to an order duly entered of record. But in *Wright v. Harris, supra,* it was held to be the duty of the county judge, in a proper case, to receive money from the executor. The propriety and necessity for such a course is strikingly illustrated by this case. An executor ought not to be held indefinitely liable. At some period he ought to be able to pay over the money in his hands, and to have a discharge of himself and his bondsmen. In this case a legacy was left to one whose residence was unknown. After the lapse of nearly six years from the appointment of the executor, the residence of the legatee still remained unknown. The executor had settled the entire estate with the exception of the payment of the legacies. It seems eminently just that he should be allowed, under such circumstances, to pay the money to the county judge, an officer by his bond rendered liable for its proper disbursement. Nor should the discharge of the executor depend upon the fact of the county judge making a written order or any order for the payment.

2. ——: ——: When the county judge receives money from an verbal order. executor, settles with and discharges him, the judge and his bondsmen from that time become liable for the money in his hands. And from that time until the settlement and discharge are in some manner impeached and set aside, we know of no legal principle under which the executor may also be held liable to the party entitled to the money.

We are satisfied that the court erred, and that the judgment must be

REVERSED.