ORA  WALTERS–CATES  v.  L.  A.  WILKINSON *et al.*, Appellants.

1 **Clerk of District Court**: LIABILITY OF BONDSMEN.  When the person entitled to part of the proceeds of a partition sale can not be found, it may be ordered to be paid into court to await further orders.  For money so paid the clerk's official bond is holden.

3 **Statute of Limitations.**  Where money is paid in during one official term to "await further order of court," and such order is made during the clerk's second term, the cause of action accrues when "the further order" is made.

4 **Practice in Supreme Court**: CERTIFICATE which recites that "a question of law" is involved, but refers to and sets out *two* questions, sufficiently states that both questions are involved.

*Appeal from Polk District Court.*—HON.  S. F. BALLIET, Judge.

MONDAY, OCTOBER 15, 1894.

ACTION on the official bond of defendant Wilkinson, as clerk of the court.  The sureties alone appeared, and judgment being entered against them, they appeal upon a certificate of the trial judge, as follows:

"Be it remembered that in the above entitled cause are involved the following questions, marked numbers 1 and 2, to wit:  Number 1.  Where, in a certain cause pending for the partition of real estate commenced in the

circuit court of Polk county, Iowa, April 1, 1884, on May
17, 1885, referees were duly appointed to sell the prem-
ises to be divided, and they gave bond, as by statute
required, and thereafter sold the premises, and the
court, on November 21, 1885, ordered said referees to
make distribution of the proceeds arising from the sale
of said real estate, except the share of one of the
defendants, who could not be found, which share was,
at the same time, ordered 'to be paid into court, to
abide the further order of court,' and which was, with-
out the knowledge or consent of any of the defendants
except L. A. Wilkinson, paid into the hands of the
then clerk of the said district court, to wit, said L. A.
Wilkinson, who, at the general election of Polk county
for the year 1884, was elected clerk of said county for
two years, and thereafter duly qualified and gave an
official bond, upon which J. G. Rounds, E. R. Mason,
C. H. Gatch, and John Mitchell were sureties, and
acted as clerk, and was thereafter, at the general elec-
tion held in Polk county in 1886, elected as his own
successor, and qualified and gave an official bond, upon
which the same parties were sureties, did the
court have a right to order the referees to pay
any portion of the funds in their hands to the
clerk of the court, and, in complying with said order,
did said clerk receive said money by virtue of his
office, and are the said sureties on his second official
bond, to wit, C. H. Gatch, J. G. Rounds, E. R. Mason,
Rebecca Mitchell, executrix of the estate of John
Mitchell, deceased, liable to plaintiff therefor, the
court having first found the said sum to be in the
hands of the defendant Wilkinson, as clerk of the dis-
trict court, and ordered on the twenty-first day of
December, 1888, that the distributive share of the pro-
ceeds of said premises to which plaintiff is entitled
should be paid to her, which order L. A. Wilkinson

has failed to obey?   Number 2.   Where referees, in a
suit to partition real estate, commenced in the
circuit court of Polk county, Iowa, April 1, 1884,
were by the court ordered to make sale of the
premises, and gave a bond as referees, as by statute
required, and thereafter did sell said premises, and the
court, on November 21, 1885, ordered said referees to
make distribution of the proceeds arising from the sale
of said real estate, except the share of one of the
defendants, who could not be found, which share was
at the same time ordered 'to be paid into court, to
abide the further order of the court,' and the same was
paid by said referees to the then clerk of the court, to
wit, L. A. Wilkinson, and thereafter, at the general
election held in Polk county in 1886, said L. A. Wilkin-
son was elected as his own successor, and he thereafter
qualified as clerk by giving a bond, upon which C. H.
Gatch, E. R. Mason, J. G. Rounds, and John Mitchell
were his sureties, the same as upon his first official
bond, and the court, on the twenty-first day of Decem-
ber, A. D. 1888, found the said sum to be in the hands
of the defendant Wilkinson, as clerk of the district
court, and ordered said L. A. Wilkinson to pay the *pro
rata* share thereof to the plaintiff, which order said
Wilkinson failed to obey, and an action was com-
menced by plaintiff to recover said money, on Septem-
ber 3, 1891, upon the official bond filed by said Wilkin-
son subsequent to his election in 1886, and the sureties
thereon, and on which the said E. R. Mason, C. H.
Gatch, J. G. Rounds, and John Mitchell were sureties,
did a cause of action accrue on the second official
bond of said Wilkinson within three years im-
mediately preceding the commencement of said
action which arose for determination before the under-
signed, trial judge? and I, S. F. Balliet, trial judge,
now certify that the above entitled cause involves the
determination of a question of law, to wit, the question

heretofore set out, and marked numbers 1 and 2, upon. which it is desirable to have the opinion of the supreme court of this state. Witness my hand, this thirteenth day of September, A. D. 1892.

"STEPHEN F. BALLIET, Judge."—*Affirmed.*

*N. B. Raymond* for appellants.

*Jesse A. Miller, Gatch, Connor & Weaver* and *Dudley & Coffin* for appellee.

GIVEN, J.—I.  The plaintiff moves to dismiss this appeal, upon the ground "that the certificate of the trial court does not show that the questions upon which it is desirable to have the opinion of the supreme court are involved in this case."  The certificate sets forth and numbers two questions, and the judge certifies "that the above entitled cause involves the determination of a question of law, to wit, the question heretofore set out and numbered 1 and 2." The motion is grounded solely upon the fact that the singular number is used, instead of the plural.  It is entirely clear that the questions certified as involved in the case are those "heretofore set out and numbered." The motion is without merit, and is overruled.

II.   We assume that the bond sued upon is conditioned as required by section 674 of the Code, one of which conditions is "that he [the clerk] will promptly pay over to the person or officer entitled thereto all money which may come into his hands by virtue of his office."   On November 21, 1885, the court ordered the share of one of the parties that could not be found "to be paid into court, to abide the further orders of the court;" and it. was upon this authority that the money was paid to and received by the clerk.  Appellants refer to the statutes regulating sales by referees in partition proceedings, and cite at length the section providing for the security of the pro-

ceeds of such sales, and from these it is contended that there was neither authority nor occasion for paying the money to the clerk. It is argued that because the provision for securing such funds in the hands of referees is ample, and because the payment to the clerk may place money in his hands in excess of the amount of his bond, it was not intended that such payments should be ordered or made. The referees were appointed for a particular purpose, and, when that purpose was served, their office ceased. The incumbent of the office of clerk changes; the clerk of to-day may cease to be the clerk to-morrow; but the office never ceases. *Prescott v. Gonser*, 34 Iowa, 175. Each outgoing clerk accounts for and pays over to his successor all money in his hands by virtue of his office, and thus such money is kept in the hands of the court through its clerk. Instances arise wherein it is desirable to terminate the duties of the referees, and not to continue them indefinitely. Indeed, this case affords an apt illustration. The business for which the referees were appointed was completed, except the paying over of the share to the person who could not be found. Surely, here was a proper occasion for ordering that money to be paid into court, to be preserved for the parties entitled thereto, that the business of the referees might be finally closed. We must not presume that courts will make such orders without due inquiry as to the security that will attend the custody of the money. We are in no doubt that a proper occasion existed for this order of the court. We think the cases of *Morgan v. Long*, 29 Iowa, 434; *Wright v. Harris*, 31 Iowa, 272, and *Doogam v. Elliott*, 43 Iowa, 342, fully answer the question as to the authority of the court to make the order, and whether the clerk received the money by virtue of his office.

In *Morgan v. Long*, it was held that money paid to the clerk upon a judgment recorded in his office was received by him in virtue of his office, and that he and

his sureties were liable therefor on his bonds. There was no more provision of statute requiring the clerk to receive money paid on judgment than there was at the time of the order and payment in this case. We see no reason why the clerk should be held to have received the money by virtue of his office in the one case, and not in the other. In *Wright v. Harris* it was held that a county judge was authorized to receive money paid by an executor upon claims filed and allowed against the estate, and that the judge and his sureties were liable on his official bond therefor. There was no statute expressly providing that the county judge was liable upon his bond for money paid to him by an executor, belonging to the estate and legatees, upon a verbal order of the judge. Appellants contend that even if the court had authority to order the money to be paid to the clerk, and that it came into his hands by virtue of his office, the court did not have power to order that it should remain in his hands until the further order of the court. It is insisted that the person for whom the money was held had a right to immediate payment on demand on the clerk. The right of the claimant to this fund depended upon his identity. It was for the court to determine, not only the number of persons entitled to share in the distribution, but the identity of the persons. As the person to whom this share belonged "could not be found," it was certainly proper that the court should hold the fund subject to its further order; for, as the case demonstrates, a further order became necessary for a distribution of this fund.

III. This action was commenced September 3, 1891. The money in question was paid to the clerk, November 21, 1885, "to abide the further order of the court;" and the further order of the court for the distribution of this money was made December 21, 1888. The first order and the payment to the clerk were made

during his first term of office, and the second order was made during his second term of office. The question presented on these facts is: "Did a cause of action accrue on the second official bond of said Wilkinson within three years immediately preceding the commencement of this action?" As Wilkinson held the money subject to the further order of the court, he was not authorized nor warranted in paying the same to any person until such further order was made. The further order was made during his second term of office, and less than three years prior to the commencement of this action, and it was only upon the making of that order that any cause of action existed against him.

Our conclusions are that the court did have the right to make the order that it did; that the clerk received such money by virtue of his office; that the cause of action against him did not arise until the order of the court was made, December 21, 1888; and that the sureties upon his second official bond are liable thereon for the payment of said money.    Affirmed.