(Hamilton County Common Pleas.)

THE STATE OF OHIO v. GEORGE HOBSON, et al.

----

The clerk of the common pleas court has to perform any and all duties which the court might impose, or which, in the administration of the common law he should do, or the court might order done as an exercise of its judicial functions. And therefore the clerk would be the legal custodian of money ordered paid into court by the court, or paid in on judgments.

The bond of the clerk of court of Hamilton county, only designates that officer as "Clerk of the court of Common Pleas," but the term "Clerk of the Common Pleas court" is simply his title, designated under the constitution of Ohio, Art. 4, sec. 16, as such, and by virtue of the statute, after his election, he becomes clerk of the superior court and circuit court; and while he is elected as clerk of the court of common pleas, and the bond given as running to the clerk of the court of common pleas, nevertheless it would embrace all the courts of which by law he might be their clerk, and his bond would be liable for whatever shortage might exist for the amounts collected or due in the superior and circuit courts, although the bond was executed, running as clerk of the court of common pleas.

Where the clerk, in paying the deputies and clerks in his office, did not conform to the law in the manner of payment, that is, by depositing the money with the treasurer, and then issuing a warrant to pay his deputies, nevertheless, the money so paid was due to the deputies and clerks in his office, and should have been paid to them, and so far as the bondsmen are concerned, they would have the right, under the statute, to set off any equitable claim which might exist against their liability.

Where the clerk deposited money in a bank, as clerk, the bank can not charge amounts paid on individual checks of the clerk against the fund deposited by him as clerk, even though the individual checks so paid had printed upon them the words, "county clerk."

The bond of the clerk is liable for whatever money came into his hands by virtue of his office, whether properly so or improperly.

----

S. W. SMITH, J.:

This is an action brought on behalf of the state of Ohio against George Hobson, George R. Griffiths, George Campbell, Simon Krug, Robert H. West and Jacob A. Haerr, as sureties upon the bond of George Hobson, as clerk of the courts of Hamilton county, Ohio, to recover under said bond the sum of $70,263.38, by reason of said George Hobson failing and refusing to pay said sum into the treasury of Hamilton county, or to any person or persons entitled to receive the same or any part thereof, except the sum of $30,763.91, which was paid to Mr. E. R. Monfort, the successor of the said Hobson in office. It is alleged that the said Hobson has converted said sum to his own use, and has failed and refused and still fails and refuses to pay any part thereof into the treasury of Hamilton county, or to any person or persons entitled to receive the same, and this action is brought against him and his bondsmen to recover from him and on his said bond the amount of his said shortage, as alleged.

The allegations of the petition, alleging the election and holding the office by George Hobson, as clerk, his resignation, and the appointment and qualification of his successor, the bond with all the endorsements thereon, the same being approved by the prosecuting attorney and commissioners, are all admitted in the answers of the defendants.

The claim consists of two parts, that which relates to moneys in the clerk's office, which should have been in the possession of George Hobson at the time of his resignation, and that which relates to false and fraudulent vouchers which were issued

by him, amounting to $2,145.45 and against which amount no defense is made.

In review of the evidence, the testimony shows that on the day when Mr. Hobson resigned and went out of office, the books of the clerk showed the following balances:

| | |
|---|---:|
| Clerks' fees, | $ 9803.75 |
| Sheriff's fees | 2813.43 |
| Witness' fees | 3794.21 |
| Stenographers' fees | 6762.13 |
| Stenographer's fees | 5276.02 |
| Criminal Stenographer's fees | 1821.00 |
| Interpreter's fees | 24.00 |
| Coroner's fees | 47.10 |
| Transportation | 828.20 |
| Criminal costs | 12452.34 |
| Printers | 135.50 |
| Old Sundries | 887.50 |
| Civil deposits | 1140.33 |
| Sundry deposits | 6743.07 |
| Advance divorce costs | 2980.00 |
| Total | $55,308.58 |

The books also show that Mr. Hobson paid $3000.00 on account of criminal costs into the county treasury on January 2, 1897, and $11,954.80 into the county treasury on account of clerks' fees on the 30th day of January, 1897, and in settlement of the quarterly report for the quarter ending January 30, 1897. The evidence, however, shows that neither of these amounts were deposited as shown by the books, and therefore it is claimed by counsel for plaintiff, that they should be charged to Hobson, making a total of $70,263.38, which is the full amount set out in the petition. Against this amount there is a credit of $30,839.91, the amount which the successor of George Hobson received. The difference therefore, between the $70,263.38 and $30,839.91, is the real deficiency claimed by the plaintiff in this case, and for which suit upon the bond is brought.

The following questions have arisen in this case:

First, whether or not the two sundry accounts were properly in the possession of George Hobson, and have been sufficiently proved on the trial of the case.

Second, the defendants claim that George Hobson being clerk of the Court of Common Pleas, his bondsmen are not liable for moneys in his possession as clerk of the Superior Court and Circuit Court.

Third, that Mr. Hobson is entitled to a credit for salaries paid by him to his deputies, and also a credit for his own salary for the last quarter.

Fourth, that the predecessor of George Hobson, Mr. John B. Peaslee, improperly paid money remaining in his hands to George Hobson, and should have paid it to the treasurer, and therefore the bond of Mr. Hobson would not be liable.

Fifth, that the Western German Bank wrongfully paid out money upon Mr. Hobson's check, out of funds deposited in his account as clerk, and that there should be a credit for this, and the state should look to the Western German Bank for re-imbursement.

The old sundry account amounts to $857.57, the large sundry account to $6743.07. The first is divided into two items of $693.90, one amount due in one case in the Superior Court, and the balance, $193.60, is made up of various old items which have been in possession of the various clerks of the court for a number of years. The large sundries account relates to moneys paid to the clerk by order of court. The various amounts which were received by the clerk are embraced in sec's. 1341, 1346, 478, 471, 472, 473, 474, 480, 1302, 1306, 1330, 7336, 7337, and 5016, 5499, 5500, 5544, 5548, 5550, 5592.

In examining into these various accounts, they may be divided into two classes. First, that which belongs to the county of Hamilton, and that which is due to outside parties. For instance, the sheriff, witness, sundries, old sundries, advance divorce costs, civil deposits, transportation, coroner and printing, amounting to $19,169.34, and the county's portion, to wit, clerk, criminal costs, stenographer of Hamilton county, criminal stenographer's costs, stenographer's fees and interpreter's amount to $36,139.24.

Coming then to a consideration of the questions raised by the defendants in this case: First, were the two sundry accounts properly in the possession of Mr. Hobson, and have they been sufficiently proven? The court is inclined to the opinion that under the evidence deduced at the trial from the books, these accounts have been sufficiently proved. The old sundry account was amounts of money received by clerks heretofore that remained in their hands, being credited to the parties entitled thereto on the books of the clerk, and being handed from one clerk to his successor from time to time. The large sundry account, embraces amounts paid in by order of court in inter-pleader suits, and various other kinds of litigation, and the court is of the opinion that they were properly in the possession of Mr. Hobson as clerk of the court, excepting in cases:

| | |
|---|---:|
| No. 74354 | $30.00 |
| " 74853 | 5.15 |
| " 69794 | 10.13 |
| Total | $45.28 |

Sullivan v. State, 121 Ind., 342; Morgan v. Long, 29 Iowa, 434; McDonald v. Ahrens, 13 Neb., 568.

Sufficient appears from the papers and entries to show that the court had before it an existing state of facts and law, which would authorize it to make the orders that were made, and this court should presume that all courts acted according to law, and made the order that was made in accordance with a state of facts existing which would warrant the orders.

Sec. 5592 is a general statute, authorizing the payment of money into court. In ad-

dition to this, sec. 1325, provides, that the clerk shall be the receiver of all moneys payable into his office, whether collected by public officers of the court or tendered by others. This last section must be an additional provision to any of the foregoing. We must construe sec. 1325, whereby the clerk is made a receiver of moneys, payable into his office, as being in addition to the other statutory duties providing for the receipt of money devolving upon him.

The clerk is the legal custodian of the records and files of the court as well as of money coming into the hands of the court through the exercise of its judicial functions.

Money has been brought into court by defendants in actions at law under the common rule from the earliest times.

In equity the payment of money into court by the plaintiff is often required as a condition of a decree or order. See Tuch v. Manning, 150 Mass., 217.

The payment of money into court is most usually ordered on interlocutory application, where persons as trustees have money in their hands to which the plaintiff can make out a prima facie title.

2nd Dan'l. Chancery Plead. & Practice, 1770.

Under the statute, the clerk must perform the duties of a clerk at common law. It is only by the legislative power that law can be bound by phraseology and by forms of expressions. The common law eludes such bondage; its principles are not limited nor hampered by the mere forms in which they may have been expressed; and while the court as well as counsel have not been able to find any case setting forth the actual duties of a clerk of a court at common law, yet it would seem that such a clerk was to perform any and all duties which the court might impose, or which, in the administration of the common law he should do, or the court might order done as an exercise of its judicial functions. And therefore the clerk would be the legal custodian of money ordered paid into court by the court, or paid in on judgments.

As to the question raised with regard to the bondsmen being liable for money in the possession of Mr. Hobson, as clerk of the Superior Court and Circuit Court, when the language of the bond is as follows: "Whereas, George Hobson was duly elected the clerk of the Court of Common Pleas, within and for the county of Hamilton, in the state of Ohio, by the qualified electors of the county of Hamilton, held on the first Tuesday of November, to-wit, November 6, 1894, and to hold his said office for the term of three years beginning on the first Monday of August after his election," and the condition of the bond was that, if the said George Hobson should promptly pay over all moneys that by him were received in his official capacity, as such clerk of the Court of Common Pleas, and should enter and record all the orders, decrees and judgment proceedings of the court of which he

may by law be required as such clerk, and shall faithfully and impartially discharge and perform all and singular, the duties of his said office, then the obligation shall be void, otherwise to remain in full force and effect and virtue; the court is of the opinion, that the term, "Clerk of the Common Pleas Court" was simply his title, designated under the Constitution of Ohio, Art. 4, sec. 16, as such, and by virtue of the statute after his election he became clerk of the Superior Court and Circuit Court; and while he was elected as clerk of the Court of Common Pleas, and the bond given as running to the clerk of the Court of Common Pleas, nevertheless it would embrace all the courts of which by law he might be their clerk.

In the case of the State v. Watson, in the 38 Arkansas Reports, which was a suit upon the bond of the clerk, McCanany was appointed and commissioned, by the Governor, County Clerk of Jackson county, Arkansas. By virtue of his office as county clerk, he was also clerk of the Circuit Court and master commissioner in chancery, and gave one bond for the faitful performance of his duties. In a partition suit brought in the Circuit Court upon which he had received money, he had failed to properly account for it, and suit was thereupon entered upon his bond. The court in that case held, that the bond was liable, and cite and criticise the case cited by counsel for defendants here, that of Hardins' Ex'rs. against Carico, 3 Metcalf, 261, and uses this language: "That it often happens in the progress of suits that money is brought into court and placed in the custody of the clerk until disposed of by order of court, and it would be unsafe to hold that the clerk and sureties are not responsible on his official bond for such moneys." The court, therefore, is of the opinion that the bond would be liable for whatever shortage might exist for the amounts collected or due in the Superior and Circuit Courts, although the bond was executed, running as clerk of the Court of Common Pleas. See also, Walters v. Wilkinson, 92 Iowa, 129

The point relating to the salaries paid by Mr. Hobson to his deputies and clerks, and also his own salary, as to whether or not these amounts should be a credit upon the amount due, the court is of the opinion that they should. While it is true, that Mr. Hobson in paying the deputies and clerks in his office did not conform to the law in the manner of payment, that is, by depositing the money with the treasurer, and then issuing a warrant to pay the clerks, nevertheless, the money so paid was due to the deputies and clerks in his office, and should have been paid to them, and so far as the bondsmen are concerned, they would have the right, under the statute, to set off any equitable claim which might exist against their liability. Therefore, so far as they are concerned, the amounts being due from the county to the various

clerks and deputies, the fact that they were paid in an improper manner could not be made use of against them, but they would be entitled to a credit for such amount.

As to the salary of George Hobson himself, the court is also of opinion that the amount due him for the last quarter, under our statutes, should also be a credit. He did not draw any of his salary for the last quarter. The statute, sec. 1348, distinctly provides that such salary can only be forfeited upon conviction, upon indictment or information, whereby the officer should be adjudged guilty of misconduct in office. There has not been a conviction of George Hobson on these grounds, and until there has been, he would therefore be entitled to his salary. Not having drawn that salary, but it being a sum of money due him, the bondsmen would have the right to off-set that amount also against the amount claimed by the state from them.

As to the $1246.00 drawn from the Western German Bank, the evidence shows that George Hobson opened an account in that bank, in the name of George Hobson, clerk of the courts. When money was drawn out of this account it was done by means of checks signed "George Hobson;" there was no account in the bank in the name of George Hobson, and all the checks so signed by him as above stated, were charged to the account of George Hobson, clerk of the courts. The testimony shows that the bank knew the official position and character of Mr. Hobson, but charged these checks to this account as upon the face of the checks was printed the words "County Clerk." The question therefore is, whether the bank had the right to so charge these checks against the account as it appeared upon the books, and whether this amount ought not to be allowed as a credit upon the claim against the bondsmen. It is a well settled rule of law that a person who has deposited in bank, money in a trust capacity, or as trustee, cannot withdraw such money on individual checks, and if the bank knew of the trust character in which the funds were deposited, such funds could not be appropriated to individual debts. It matters not, it seems to the court, that the words "County Clerk" were printed upon the check.

Where the drawer of a check has no account individually with the bank upon which the check is drawn, but has an account there as administrator, or in some other trust capacity, it is wrong for the bank to pay the check and charge it to the trust account.

Supreme Court of Ohio. (Announced March 29, 1898.) First National Bank of Belmont, Ohio v. First National Bank of Barnesville, Ohio. Error to the Circuit Court of Belmont county. 39 Bull., 388.

We must look to the contractual relations existing between the parties as evidenced by the account and the manner in which the checks were signed. This contractual relation was such, especially in the light of the knowledge the bank had of the official, or trust capacity of Mr. Hobson, as would preclude any other conclusion than that the amounts of the checks in question were improperly charged.

It would seem, therefore, that this amount of $1246.00 should be allowed as a credit against the amount claimed from the bondsmen.—See Am & Eng. Enc. of Law, 2nd Ed., Vol. 3, p. 833; Shepherd v. Meridan Nat. Bank, 48 N. E. R., 346; Baker v. New York Nat'l. Ex. Bank, 100 N. Y., 31.

So far as the claim is made that the money paid by John B. Peaslee to George Hobson was improperly paid, and that, therefore, if any person is liable, the bondsmen of Mr. Peaslee are liable for this amount, it seems to the court is untenable.

The term of office of John B. Peaslee, as clerk of the courts, expired on the 5th day of August, 1895, when he was succeeded in office by George Hobson. On that day, the evidence shows that Mr. Peaslee had in his possession the sum of $44,561.79, divided among various funds. This amount, John B. Peaslee on said day paid over to his successor, George Hobson. Since that time, George Hobson, as shown by the books, has properly accounted for and paid over a large amount of this sum to the parties who were entitled thereto, and on the 26th day of April, 1897, when he was succeeded in office by another clerk, he had in his possession of the moneys paid to him by John B. Peaslee, the sum of $25,549.46. Of this amount the claim is made that the following accounts and sums, still remaining in the hands of George Hobson, should not have been paid to him by John B. Peaslee:

Criminal costs....................$11,500.14
Criminal stenographer's fees.....  1,147.75
Judicial stenographer's fees......  5,636.48
Interpreter's fees................     3.00
                                  ----------
            Total       $20,345.00

These amounts, it is claimed, John B. Peaslee should have paid into the county treasury, and not to his successor. The remaining accounts, which go to make up the total sum of $25,549.46, as above stated, it is admitted were properly paid to George Hobson. These amounts are as follows:

Sundry account............ .......$2,047.67
Civil deposit account.............   733.33
Sundry old.......................   815.53
Advance divorce..................  1,155.00
Unclaimed witness' fees...........   452.93

The statute, sec. 1340, distinctly provides that the clerk, upon ceasing to be clerk, shall pay over all money to his successor, then in his hands, received as such officer. It would seem to be a fallacy to hold, even if one clerk should improperly have in his hands money, that he would still have the right to retain that money and not surrender it, and pay it over to his duly elected and qualified successor. But the statute is broad enough, it seems to the court, to em—

brace all moneys, that is, whether money is properly in the clerk's hands or improperly there—whatever money by virtue of his office he has received and retained in his hands at the time of going out of office, he is by the statute directed to turn · over to his successor. It has been the practice for many years for the clerks going out of office to deliver to their successors in office, such moneys as may remain in their hands, and the statute can mean no less than what it says, and that is, that all money (and this must mean from whatsoever source that money may come, if it comes into the clerk's hands by virtue of his office, that is, by virtue of his being clerk), should be turned over to the successor in office, and would include money for which the clerk should account. Therefore, the claim that the bond of Mr. Peaslee would be liable for such amounts rather than the bond of Mr. Hobson, does not seem to be well taken by the defendants.

Coming then to a re-capitulation of the amounts, the account of George Hobson as clerk, may be stated as follows:

George Hobson,
In account with the State of Ohio.

Cr.

By amount paid to Mr. Monfort,
clerk, by Mr. Hobson............$30854.11
By salaries.........................  1780.00
By Geo. Hobsons salary..........  2430.55
By case 74354....................    30.00
By case 74853....................     5.15
By case 69794....................    10.13
By Amt. Western German Bank...  1246.69
By deficiency....................  20002.69
                                 —————————
                                 $72408.63

Dr.

To amount claimed in the petition
.................................$70263.38
To forged vouchers...............  2145.25
                                 —————————
                                 $72408.63

The deficiency therefore, would seem to be $20,002.69, for which the bondsmen would be liable, and for this amount a decree may be entered.

Rendigs, Foraker & Dinsmore, County Solicitors, Atty's. for Plaintiff.

Miller Outcalt, Wilson & Herrlinger, Campbell, Bates & Meyer, and Harrison & Aston, Atty's. for Defendants.