SCHOOL TOWNSHIP OF EDEN IN CARROLL COUNTY, STATE OF IOWA, Appellant, v. HENRY STEVENS, Appellee.

**Bonds:** LIABILITY FOR LOSS OF TOWNSHIP FUNDS. There is no liability 1 on the bond of a township treasurer providing that he shall "exercise all reasonable diligence and care in the preservation and lawful disposal of all money," for the loss of funds occurring through the failure of a bank in which they were deposited, in the absence

of a showing of negligence of the treasurer in selecting the depository.

**Townships:** PAYMENT OF WARRANTS BY TREASURER FROM OWN FUNDS:
2 RECOVERY. Where a township treasurer expecting to be reimbursed paid warrants from his individual funds, at a time when the public funds were rendered unavailable by the closing of the bank in which they were deposited, he was entitled to recover therefor from the township, when through insolvency of the bank the funds were lost.

**Same:** ESTOPPEL. The fact that a township treasurer rendered annual
3 statements in which funds tied up in an insolvent bank were treated as moneys on hand, did not estop him from claiming reimbursement for warrants paid from his own funds, where the facts were fully understood and it was expected that a portion of the funds in the bank would be available to the township.

**Pleadings:** SEPARATE COUNTS: INSUFFICIENCY OF ONE. Where there are
4 two counts of a pleading, setting up the same cause of action on slightly different legal theories, one of which presents a good cause of action, the insufficiency of the other count becomes immaterial.

*Appeal from Carroll District Court.*—HON. F. M. POWERS, Judge.

SATURDAY, DECEMBER 14, 1912.

THE plaintiff is a school district. The defendant was its treasurer. This action was brought on his official bond. The defense was that the funds of the plaintiff were lost without fault of the defendant, through the failure of a bank in which they were properly deposited by the defendant in a separate and distinct account. The defendant also filed a counterclaim to recover moneys advanced by him while such treasurer in payment of valid orders and warrants drawn upon him while in such office, and paid by him in advance and in anticipation of the receipt of the public revenues for that purpose. At the close of the evidence the trial court sustained defendant's motion for a directed verdict on the main case and sustained the motion of the plaintiff for a directed

verdict on the counterclaim. Both parties appealed. Plaintiff having first appealed, it is denominated the appellant.— *Reversed* and *remanded,* on defendant's appeal and affirmed on plaintiff's appeal.

*Reynolds & Meyers,* for appellant.

*Chas. C. Helmer* and *E. A. Whissler,* for appellee.

EVANS, J.—The defendant became the plaintiff's treasurer in 1903, and so continued by annual elections until July, 1909. The funds of the plaintiff came into his hands from his predecessor in the form of a check on the Bank of Templeton, a going concern of repute. He deposited the check in the same bank to his account as treasurer of the plaintiff district. Such account continued as a distinct and separate account down to the date of the failure, January 27, 1908, and defendant deposited to such account all the moneys of the plaintiff which came to his hands during such period, and paid all warrants and orders by appropriate checks thereon. There is no claim of any commingling of the funds or of misappropriation of any kind. The amount deposited in such account at the time of the failure was $2,011.93. The bank was a private bank owned by one Wilson. Wilson died on January 27, 1908, and an administrator was appointed for his estate, who, as such, took possession of the bank but did not operate the same as a bank. Wilson proved to have been insolvent, but this fact was discovered only after his death. The immediate cause of the closing of the bank was the death of Wilson, and not his supposed insolvency. The official bond of the defendant which was in force at the time of the failure was conditioned that he should perform all the duties of his office and that he should "faithfully account for all balances" of money in his hands at the termination of his term of office, and "promptly pay over" the same to his successor, and "that he will hereafter exercise all reasonable

diligence and care in the preservation and lawful disposal of all the money," etc. The plaintiff brought this action in three counts, upon this bond, and two succeeding bonds executed, respectively, July, 1908, and July, 1909. The defendant is clearly liable, if at all, on the bond in force at the time of the loss, and we need give no separate attention to the other bonds. After the death of Wilson, and while the public funds were apparently "tied up," the officers of the plaintiff issued warrants in the ordinary way, and the defendant paid the same as presented out of his own funds in anticipation of receiving later the necessary public revenues to meet the same. The amount so paid by him over and above the revenues received by him amounted at the close of his service to $811.12, which sum he asked to recover by counterclaim. The plaintiff conceded the amount so paid out by the defendant, and tendered him full credit therefor on the original amount of the claim, and only asked to recover from the defendant the balance of $1,200 remaining. By way of reply to the counterclaim, the plaintiff pleaded that the payment of warrants by the defendant out of his own funds was voluntary and without authority, and that the plaintiff therefore was not liable therefor. The plaintiff pleaded further, by way of estoppel, that at the annual settlements had between the defendant and the plaintiff's board of directors in July, 1908, and July, 1909, respectively, the defendant reported the full amount of money due the plaintiff as being on hand, and that his report was approved upon such representation.

I. We will give our first attention to the controversy as presented in the main case. The contention of plaintiff is that the liability of the defendant for the money coming into his hands as treasurer is absolute, and that no defense of diligence is available to him. In support of this contention, reliance is had upon the following cases: *District Township v. Morton,* 37 Iowa, 550; *District Township v. Smith,* 39 Iowa, 9; *District township v. Hardinbrook,* 40 Iowa, 130.

1. BONDS: liability for loss of township funds.

The contention of the defendant is that, in the course pursued by him for the care of the public funds, he performed his full duty as indicated by the conditions of his bond, in that he used every diligence which could have been within the contemplation of himself or of the public corporation which he served. In support of this contention, reliance is had upon *Ross v. Hatch*, 5 Iowa, 149, and the recent case of *Hansen v. Independent District*, 155 Iowa, 264. The plaintiff contends that the holding of the court in the last two cases cited is not consistent with the holding in the *Morton, Smith* and *Hardinbrook* cases. We think there is force in this contention, although the court in the *Smith* case assumed to distinguish such case from the case of *Ross v. Hatch, supra.* It was there said that the liability of the treasurer was determined by the conditions of his bond. In the *Ross* case, the conditions of the bond bound the treasurer to "reasonable diligence and care." This provision was not contained in the bonds involved in the later cases of *Smith, Morton,* and *Hardinbrook,* above cited. Such provision was contained in the bond involved in the *Hanson* case, *supra,* and is contained in the bond involved herein. The present case therefore comes within the letter of the *Ross* and *Hanson* cases, *supra,* and within the distinction made in the *Smith* case, *supra.* We are not quite willing, however, to lean upon so fine a distinction, and are inclined to the view that one line of decisions ought to be followed and the other frankly overruled. The *Morton, Smith,* and *Hardinbrook* cases were all decided at about the same time. They were put largely upon the ground of public policy. The defense presented in one of the first two cases was that the money had been burned by accident, and the defense presented in the other was that the money had been stolen. Such defenses were in their nature comparatively easy to fabricate. The public corporation would naturally encounter great difficulty in meeting evidence produced in support of such a defense, even though fabricated. The same rule, however, was applied in the

*Hardinbrook* case, wherein the defense of loss by bank failure was presented. In these cited cases, emphasis was laid upon the provision of the statute requiring the treasurer to "hold" the money. It was the current judicial opinion at that time that a public treasurer could not lawfully deposit public funds in a bank, and that to do so, however innocently in a moral sense, would amount to a technical conversion. *Lowry v. Polk County,* 51 Iowa, 50 (later overruled). Since that time the ordinary methods of business and of the care and disbursement of funds have been quite revolutionized. The statute which required the treasurer to "hold" the money has been slightly amended by the elimination of the word "hold" and the substitution therefor of the word "receive." Code, Section 2768. The substitution is not very important in its effect upon the statute as a whole, but the word "receive" does not lend itself readily to the degree of emphasis which was formerly placed upon the word "hold." The doctrine that a general deposit of public funds in a bank to the separate account of the officer as such is of legal necessity a technical conversion has been repudiated. *Officer v. Officer,* 120 Iowa, 389; *Hunt v. Hopley,* 120 Iowa, 695; *Hanson v. Roush,* 139 Iowa, 58; *Brown v. Sheldon Bank,* 139 Iowa, 83.

It is held, in effect, in the foregoing cases, that the adoption of this method of caring for public funds, their identity being carefully preserved by separate and distinct accounts, as such, is not only permissible but commendable. In the light of modern methods of business, it would be difficult to specify a safer method of care and custody than is thus provided. Indeed, it might be a fair question whether, in the absence of excusing circumstances, a treasurer could properly ignore such facilities and subject public funds to the risk of loss naturally incident to a personal custody of currency. Where such course is followed, we can see no reason of public policy to be subserved by declaring for a rule of absolute liability of the treasurer, notwithstanding the exercise of all diligence

and the observance of every legal duty. We adhere, therefore, to the rule followed in *Hanson v. Independent District, supra,* and foreshadowed in the cases of *Officer v. Officer, Hunt v. Hopley, Hanson v. Roush,* and *Brown v. Sheldon Bank,* cited above, and *Ross v. Hatch, supra.* In so far as the other cases cited by appellant should appear to be inconsistent herewith, they must be deemed to be overruled to that extent. The trial court therefore rightly held against the claim of absolute liability on the part of the defendant.

As a last word, the plaintiff contends that, even though the defendant was not absolutely liable as contended for, yet the question of his diligence was one for the jury under the evidence. This point is not entirely free from difficulty. Cases might arise wherein the diligence and care of the treasurer in the selection of the depository bank might be open to question under the evidence. The evidence in this record is practically undisputed at all points. We think the most that could be claimed for the plaintiff is that there is a scintilla of evidence upon which an inference of negligence might be based. We do not think, however, that the evidence would warrant any other verdict than that the defendant was free from fault. Upon that view, therefore, we would not be warranted in remanding the case for trial upon that question.

II. We come now to the defendant's counterclaim. This was dismissed by the trial court. The first contention of the plaintiff is that the defendant made the payments voluntarily and without authority. That he acted voluntarily is, of course, not questioned. He was not, however, a volunteer in an intermeddling sense. He was the treasurer. Through him alone could warrants be paid. The present funds of the district were "tied up." At first this inconvenience was expected to be quite temporary. Indeed, the fact and extent of the loss came to the officers of the plaintiff and to the defendant quite gradually. When the fact of insolvency became known, there was still the hope of partial

2. TOWNSHIPS: payment of warrants by treasurer from own funds: recovery.

recovery in the form of dividends. If dividends were paid, they would be paid into the hands of the defendant. Other taxes were in course of collection and on the way into the same custody.

The defendant doubtless could have refused all warrants and compelled all holders to wait. What he did was to pay the warrants as presented out of his own funds, expecting to reimburse himself out of the public funds as soon as they should be available. He served no interest of his own thereby. The situation was anomalous. It was not covered by any statutory provision. He found himself in the breach, not of his own volition, but because of his official position. His response to it was so reasonable and so in accord with the public interest and without detriment to any right or interest of the plaintiff that he ought not to be deemed an intermeddler or a volunteer in such sense. The plaintiff got the full official benefit of the money so paid out. It would be a reproach to the law if there were no remedy available to the defendant under such circumstances. We can think of no fair reason, either legal, equitable, or moral, why he should not be reimbursed.

III. As against the counterclaim, the plaintiff pleads also an estoppel in that annual settlements were had with

3. Same: estoppel.

the defendant, in July, 1908 and 1909, respectively. In these settlements the funds "tied up" in the bank were treated as "moneys on hand," and they apeared in the defendant's account accordingly. There was neither fraud nor misunderstanding nor mistake of any kind. The facts were fully understood by all parties, and the expectation of realizing something was not abandoned. True, the settlement was binding upon the defendant. He does not claim otherwise. He disputes no item of his account as presented then. "The money on hand" was shown by the presentation of his bank book. If, as we have above held, he deposited such funds in said bank in the exercise of proper diligence, then it was "money

on hand'' in a legal sense as between him and the plaintiff. The issues in this case do not involve in any manner the correctness of the settlements with the directors. They involve only the question as to whether the loss sustained shall fall upon the plaintiff or upon the defendant. That question was not involved in the settlements; nor did either party waive its contention in relation thereto by making the annual settlements required by the statute. We see nothing therefore in such settlements upon which to base a claim of estoppel.

Reliance is had by plaintiff at this point upon the cases of *Webster County v. Hutchinson,* 60 Iowa, 721 and *Boone v. Jones,* 54 Iowa, 699. These cases do not reach the point. The first case cited involved fraud and misrepresentation. The second involved the correctness of the settlement and the presumption obtaining in the absence of evidence as to whether statutory requirements were followed in the settlement.

IV.   The defendant pleaded his counterclaim in two counts. These counts presented the claim upon two different

4. Pleadings: separate counts: insufficiency of one.

legal theories. The trial court sustained a demurrer to the first count and at the close of the evidence directed a verdict against the defendant upon the second count. It is not important that we should discuss these counts or determine which presented the better theory. ·

We are of the opinion that the first count, to which a demurrer was sustained, presented a good cause of action. Whether the second count did likewise is quite immaterial. The difference between the two counts is not very substantial. It is our conclusion therefore that the order and judgment of the trial court should be affirmed on plaintiff's appeal and reversed on defendant's appeal. The case will therefore be remanded to the district court, with directions to enter judgment for the defendant upon his counterclaim.— *Reversed* and *remanded.*