PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant, v. WILLIAM S. HART et al., Appellees.

MARCH 13, 1928.

*Pike, Sias, Zimmerman & Frank,* for appellant.

*William S. Hart,* for William F. Shafer, Clerk, appellee.

ALBERT, J.—The facts in this case, which are practically undisputed, are substantially as follows: The plaintiff brought a foreclosure action against W. S. Hart, and obtained a judgment; the land was sold, and a sheriff's certificate issued to the plaintiff under date of November 27, 1925. Within the proper time, the defendant William S. Hart redeemed from said foreclosure by paying to the clerk of the district court $8,617.89, plus certain costs. This payment was made by turning over to the clerk a draft for $8,000, and also a check for $617.89. The clerk, on receipt of the same, notified one Pieper, local representative of the plaintiff, of such payment on the date the same was made, which was November 27, 1925. On the following day, Pieper appeared at the office of the clerk, and the clerk suggested that he would pay this amount, and drew a check for the full amount of $8,617.89, but stated that he must take the draft and check down and deposit them, or he would be overdrawn. Together they went to the First National Bank, where the $617 check was deposited; but the bank refused to accept the $8,000 draft, because it was made payable to William S. Hart and the Prudential Insurance Company, and while Hart had indorsed the same, the Prudential Insurance Company had not done so. The indorsement of Hart on this check or draft left it payable to the Prudential Insurance Company, and it was then arranged that the $8,000 draft should be turned over to Pieper; and the clerk drew a check, payable to the Prudential Insurance Company, for $617.89, and delivered the same, together with the draft, to Pieper. Pieper, on the same day, forwarded both of these instruments to Pike, Sias, Zimmerman & Frank, at Waterloo. principal attorneys in charge of this foreclosure, and the papers reached them on the morning of November 30, 1925. In the city of Waterloo was a company by the name of Leavitt & Johnson Trust Company, which had authority to indorse the said draft, being agents of the Prudential Insurance Company of America. As soon as the draft reached the Waterloo attorneys, they called

a member of the firm of Leavitt & Johnson by telephone, and turned over to that company the aforesaid draft and check. They immediately, and in due course of business, included it with other matters of a similar nature, and forwarded the same to their Chicago correspondent. The draft for $8,000 was duly paid, and is not involved in this controversy. On the morning of November. 30, 1925, the first National Bank of Waukon closed its doors, and went into the hands of a receiver; and the check for $617.89 issued by the clerk was never paid.

As above noted, this proceeding is summary in its nature, plaintiff demanding judgment against Shafer, clerk of the district court, for the amount represented by said check. The evidence shows that the First National Bank of Waukon was the general depository of Shafer, clerk of the district court. It further shows that this bank was regarded as a strong bank, and that the clerk not only deposited his official funds, but his own private funds, therein, and that he had no information or knowledge of any kind that the bank was insolvent, or of any danger of suspension of the bank, and no reason to suspect that it was other than a solvent institution at the time he made this deposit.

The clerk filed an answer; but in proceedings of this kind, an answer or response by the defendant does not cast any greater burden upon the plaintiff.. *State v. Morgan,* 80 Iowa 413. Section 11612, Code of 1924, provides that matters of this kind "shall be heard and determined by the court without written pleadings, and judgment given according to the very right of the matter."

As heretofore noted, the check in controversy was made payable to the Prudential Insurance Company of America. It is urged on behalf of the clerk that, when Pieper received this check, he should have presented it to the drawee bank, which was situated in the same city as the clerk's office, and that, had he done so, the check would have been paid, and this loss would not have occurred. There is no showing that Pieper had any authority whatever to indorse this check in the name of the Prudential Insurance Company of America, and the law gives him no such authority. *Howard v. Kelly,* 137 Iowa 76; *Swanson Automobile*

*Co. v. Stone,* 187 Iowa 309; 6 Corpus Juris 659. This contention of the clerk's must fail.

It is also argued that, the clerk having notified Pieper of the payment of this money into the clerk's office on November 27, 1925, Pieper should have come. in that day and drawn this money. This contention has no foundation in law.

The principal contention of plaintiff is that the clerk of the district court, as a public officer, is liable for any funds received by him by virtue of his office, as an insurer, and is not relieved from liability by the loss of the money without his negligence or fault. As supporting this proposition they cite Code of 1924, Section 12783; *Morgan v. Long,* 29 Iowa 434; *Wright & Co. v. Harris,* 31 Iowa 272; *Billings v. Teeling,* 40 Iowa 607; *Doogan v. Elliott,* 43 Iowa 342; *Lowry v. Polk County,* 51 Iowa 50; *Walters-Cates v. Wilkinson,* 92 Iowa 129; *Logan v. McCahan,* 102 Iowa 241; also, numerous cases from other jurisdictions, to which foreign citations we will give no attention, as this case must be decided under the statutory law of this state.

Section 12783 reads:

"He shall be liable upon his bond for all such funds, moneys, or securities which may be deposited with him, and shall make complete verified statements thereof to the board of supervisors at the January and June sessions each year."

To fairly understand the import of this section, its previous history must be reviewed:

Section 370, Code of 1897, provided for the deposit of funds with the clerk of the district court by the administrator, guardian, trustee, or referee. The succeeding section (Section 371) provided that the clerk "shall be liable upon his bond for all funds, moneys or securities which may be deposited with him under the provisions of this chapter."

These sections of the Code of 1897 were amended by Chapters 13 and 14, Acts of the Twenty-eighth General Assembly, by striking out certain words therein, leaving the sections to read as subdivided in Sections 12778 and 12783, Code of 1924. The general subject of this chapter (551) is "Securities and Investments of Trust Funds," and we have serious doubts whether or not this Section 12783 is in any way controlling in the matter before us. But, if we assume that it is, the liability there pro-

vided is bottomed upon the bond of the clerk, and in order to understand what this liability is, we turn to Section 1059, Code of 1924, where the form of official bond is set out. The obligations of the principal are marked out, so far as material to this case, as follows:

"* * * that he will promptly pay over to the officer or person entitled thereto all moneys which may come into his hands by virtue of his office; * * * that he will exercise all reasonable diligence and care in the preservation and lawful disposal of all money, books, papers, securities, or other property appertaining to his said office, and deliver them to his successor, or to any other person authorized to receive the same."

The question we have before us, therefore, is whether or not, under these statutory provisions, the clerk in the instant case is absolute insurer of the funds turned into his hands, or whether he is only liable in case he fails to comply with the statutory requirements to which reference has been made.

As to the cases cited by appellant, in the case of *Morgan v. Long,* supra, the sole question determined was whether certain funds came into the hands of the clerk *by virtue of his office.* It was held that they did. Nothing further is determined in that case.

In *Wright & Co. v. Harris,* supra, the county judge was the recipient of $217 from the executrix of an estate in payment of a claim due the plaintiff from the estate. He failed to pay this money over to the claimant. It was held that, under the statute, he had a right to receive said money, and that the failure of the county judge to pay it over to the claimant was a breach of the bond on which suit was brought.

In *Billings v. Teeling,* supra, the action was on the official bond of the clerk of the district court. The clerk had been elected for two terms, the money in question having been paid to a predecessor, and by him turned over to the present clerk. The bond sued upon was the bond for the clerk's first term of office. His plea was that the money for which suit was brought was in his hands at the expiration of his first term, and held by him at the beginning of his second term; hence no liability on the bond. The question determined in the opinion is the question of tender. (The money alleged to be in the hands of the clerk was paid into court as a tender.) The court instructed the jury, among other

things, that money thus paid into court must be legal tender money. It was held that such question was not involved in the case, and further, that the clerk, as such, could not raise such question, because the right to object that it was not the right kind of money rested wholly with the person for whose benefit it was paid into court.

In *Doogan v. Elliott*, supra, one Killen was the executor of the estate of Thomas Doogan. Under the terms of the will, certain payments were to be made to one Patrick Doogan, whose residence was unknown, and in case he was not found, his share was to go to certain other legatees. Being unable to locate this heir, the executor, wishing to close the estate, reported the matter to the county judge, who ordered the money paid into the court, and the executor was discharged. It was held that the discharge of the executor did not depend upon the fact that the county judge made a written or oral order or any order of payment. When a county judge receives money from an executor, and settles with and discharges him, the judge and his bondsmen from that time become liable for the money in his hands. In this case, it was sought to hold the executor for this fund so paid to the county judge. It decides nothing except that the county judge had the right and power to receive such money, and that, when he so received it and entered a discharge of the executor, it released the executor and his bondsmen.

The case of *Lowry v. Polk County*, supra, is a case in which a county treasurer deposited county money in a bank, which was lost through the failure of the bank. It was there held that the county treasurer was absolutely liable for this fund so deposited. The case was made to turn upon the question of whether or not the deposit was a loaning out of the county's money in violation of the statutory prohibition against such conduct on the part of the treasurer. It was held that the deposit in fact did constitute a loan, and was, therefore, an unlawful deposit of public money, which constituted a breach of the bond. This doctrine has been thoroughly overruled by this court, however, in the later cases of *Elliott v. Capital City State Bank*, 128 Iowa 275; *School Township v. Stevens*, 158 Iowa 119; *Leach v. Beazley*, 201 Iowa 337.

*Walters-Cates v. Wilkinson*, supra, is an action on the official bond of Wilkinson, clerk of the district court. In a partition case, there was an order made for the referees to pay certain

funds to the clerk of the court. The holding was that the court had a right to make such an order, and that the clerk received said money by virtue of his office. So far as the case at bar is concerned, this was all that this court held in the *Walters-Cates* case.

In *Logan v. McCahan*, supra, there was a co-executorship, and part of the funds belonging to the estate was in the hands of one of the executors. The court ordered the co-executor to bring action against him to recover the same; and, upon institution of an action, the defendant paid the amount in question, together with costs, to the clerk of the court. The clerk paid the money to one of the attorneys, and the holding was that the clerk was not justified in so paying the money, and that he was liable to the owner of the fund.

Turning now to the other side of this position,—what was the legislative intent in these various statutes as to the liability of the clerk of the court under these circumstances?

The only definite indication we have of this intent is that marked out in the aforesaid Section 1059, setting out the form of bond required of all officers, under which they are required to exercise reasonable diligence and care in the preservation and lawful disposal of all money, etc., appertaining to their office. It seems to us that, if it had been the intention of the legislature to make the clerk absolutely liable, or, in other words, an insurer of all funds that came into his hands, this provision would not have been placed in the required bond. There are many decisions of our court touching the question of deposit of money by officers in banks which subsequently failed; but, without now attempting to point them out, it can be said generally that many of them are decided under special statutes governing the particular case then under consideration, and we will not stop to designate them.

In the case of *Ross v. Hatch*, 5 Iowa (Clarke) 149, the county treasurer had, by way of taxation, collected certain funds that belonged to the plaintiff, which funds were stolen from the treasurer's office. The bond contained two clauses identical with those in the bond in the case at bar. We said in that case:

"The State has not seen proper to require of him [the county treasurer] more than reasonable diligence and care in the preservation and disposal of the public funds; and when he

shows that he has exercised this diligence and care, and that the moneys have been stolen from him notwithstanding, he is discharged from all liability.''

The rule of the *Ross* case is recognized and treated in *Hunt v. Hopley*, 120 Iowa 695, where we said, among other things:

''The liability of the officer, however, is to be controlled by the conditions entering into his bond.''

In *Rhea v. Brewster*, 130 Iowa 729, certain funds came into the hands of the clerk, which he deposited, and drew interest thereon. The action was against the clerk and his bondsmen, to recover the interest. We there said:

''The appellants argue the case on the theory that the clerk is absolutely liable for money coming into his hands as such. In view of the form of the bond and the language of the statute, it is exceedingly doubtful whether this is so. See *Ross v. Hatch, County Treasurer*, 5 Iowa 149. The decisions relating to the liability of the school district are not in point, as they are based on statutes applicable to such officers only.''

*School Township v. Stevens,* supra, is a case in which it is sought to declare absolute liability on a treasurer's bond, because of a clause in it requiring a reasonable diligence in the care and preservation of the fund, identical with the one before us. The funds were deposited by the school treasurer in a bank which failed, and the funds were lost. It was there held that there was not an absolute liability on the treasurer, so long as he complied with the requirements of his bond as to diligence and care.

Another phase of this question is discussed in *Incorporated Town of Conway v. Conway*, 190 Iowa 563.

It is our conclusion under our former cases that the clerk of the district court in question was not absolutely liable, and was not an insurer of the funds in his hands, and, if he complied with the requirements of his bond as to the use of reasonable care, he is not liable herein. Under the evidence, the showing is that he deposited this money in the First National Bank of Waukon, then reputed and regarded as a strong bank; that he knew of no reason to question its stability, had heard nothing adverse to its financial standing, and had faith in it himself, because he made it a depository of his private funds.

We feel, under these circumstances and the showing made,

that the clerk was not liable for this loss. This was the conclusion reached by the district court.—*Affirmed.*

STEVENS, C. J., and EVANS, DE GRAFF, MORLING, and WAGNER, JJ., concur.