KATE DIRKS V. CORA JUEL ET AL.

FILED DECEMBER 6, 1899.    No. 9,049.

1. **Bringing Money Into Court.** Bringing money into court is the act of depositing money in the hands of the proper officer of the court for the purpose of satisfying a debt or duty.

2. ———: CLERK. The clerk of the court is the proper custodian of money paid into court pursuant to an order or judgment of the court.

3. ———: ———: PARTITION. Money paid to the clerk of the district court by referees in partition proceedings, in obedience to an order directing the money to be brought into court, is received by such clerk in his official capacity.

4. ———: ———: CONVERSION BY TRUSTEE: DEPOSIT IN BANK. A trustee who deposits trust funds in a bank to his private account is, in the absence of special authority so to do, guilty of conversion.

5. ———: ———: ———: ———: LIABILITY OF SURETIES. And in such case the sureties on his official bond for the term of office, during which such conversion occurred, are liable to the party injured.

6. **Conversion by Trustee:** REMEDY. In case a trustee has converted trust funds, the *cestui que trust* may either pursue the fund or sue for the conversion.

ERROR from the district court of Nemaha county. Tried below before LETTON, J. *Reversed.*

27

The facts are stated in the opinion.

*George W. Cornell* and *W. H. Kelligar*, for plaintiff in error:

When the clerk received the money under an order directing it to be brought into court, he received it in his official capacity, and the sureties are liable. See *Mc-Donald v. Atkins*, 13 Nebr., 568; *Heppe v. Johnson*, 14 Pac. Rep. [Cal.], 835; *Walters-Oates v. Wilkinson*, 60 N. W. Rep. [Ia.], 514.

The act of the clerk in depositing in his own name money held as trustee amounts to conversion. See *Pine County v. Willard*, 39 N. W. Rep. [Minn.], 72; *State v. Alsup*, 4 S. W. Rep. [Mo.], 31.

Defendants can not escape liability on the ground that the clerk had the money when he entered upon his second term of office. See *Sidner v. Alexander*, 31 O. St., 378; *District Township of Fox v. McCord*, 6 N. W. Rep. [Ia.], 536; *Thompson v. Dickerson*, 22 Ia., 360.

Delay in taking the money from the clerk did not release the sureties. See *State v. Alden*, 12 O., 59; *Boice v. Main*, 4 Denio [N. Y.], 55.

*H. A. Lambert*, contra:

Sureties on an official bond are answerable only for such acts of their principal as are done by virtue of his office. See *Ottenstein v. Alpaugh*, 9 Nebr., 237; *Kendall v. Aleshire*, 28 Nebr., 707; *McCormick v. Thompson*, 10 Nebr., 484; *Huffman v. Kopplekom*, 8 Nebr., 344.

Defendants are liable only for money received by the clerk within the line of his official duty. See *Waters v. Carroll*, 9 Yerg. [Tenn.], 102; *Rogers v. Odom*, 86 N. Car., 432.

The court can not by an order increase the liability of the sureties on the official bond of the clerk. See *Scott v. State*, 46 Ind., 203; *State v. Givan*, 45 Ind., 267.

Officer's depositing of money to his individual credit

Dirks v. Juel.

does not amount to a conversion, where the funds can be traced and identified. See *Cassilly v. Cochran*, 13 S. W. Rep. [Ky.], 824.

The use of public funds in a private business is not alone a breach of an official bond. See *Brown v. State*, 78 Ind., 239; *Bocard v. State*, 79 Ind., 270; *Dumas v. Patterson*, 9 Ala., 484.

Where an officer has collected money during his first term of office, and such money remains in his custody when he enters upon the discharge of the duties of his second term, the sureties for the latter term become immediately liable therefor, and those of the former term are relieved from further liability concerning such money. See *Board of Education v. Fonda*, 77 N. Y., 350; *State v. Van Pelt*, 1 Ind., 305; *De Hart v. McGuire*, 10 Phila. [Pa.], 359; *Moore v. Madison County*, 38 Ala., 670; *Kelly v. State*, 25 O. St., 567; *Miller v. Moore*, 3 Humph. [Tenn.], 189.

It is the time of the defalcation, and not the time of the receipt of the money, that determines which set of sureties are liable where an officer has held two or more successive terms. See *Townsend v. Everett*, 4 Ala., 607.

The sureties on the bond at the time of the actual misappropriation or squandering of the funds are the ones liable therefor. See *Dumas v. Patterson*, 9 Ala., 484; *Ingraham v. McCombs*, 17 Mo., 558.

References as to non-liability of first-term sureties: *Bruce v. United States*, 17 How. [U. S.], 437; *Governor v. Robbins*, 7 Ala., 79.

SULLIVAN, J.

From January, 1888, to December 4, 1894, Edward Juel was the duly constituted clerk of the district court for Nemaha county. During his first term, which expired January 7, 1892, he received in his official capacity the proceeds of a partition sale of real estate, and deposited the same in the Carson National Bank to the credit

of his individual account. A portion of the fund so deposited was afterwards paid out on the order of the court to the persons entitled to receive it. Kate Dirks, one of the co-owners of the partitioned estate, having failed to receive her share of the money paid into court by the referees, instituted this action against Juel's sureties for the first term, on the theory that the act of depositing the money in the bank without anything to denote its trust character amounted in law to a conversion. The sureties answered, denying (1) that their principal received the avails of the partition sale by virtue of his office; and (2) that if there was any defalcation, it occurred during Juel's second term. The court, having tried the cause without a jury, found the issues, and rendered judgment, in favor of the defendants.

The petition in error presents two questions for decision. It is first insisted that in receiving the money from the referees Juel did not act in his official capacity, and that his sureties were, therefore, not liable on their bond. After carefully considering the arguments and authorities brought forward in support of this contention, we are entirely satisfied that the act in question was done in performance of an official duty, and was, consequently, within the purview of the defendants' contract. Section 889 of the Code of Civil Procedure declares: "The clerk of each of the courts shall exercise the powers and perform the duties conferred and imposed upon him by the other provisions of this Code, by other statutes, and by the common law. In the performance of his duties he shall be under the direction of his court." By section 12 of chapter 10, Compiled Statutes of 1899, all official bonds are made obligatory upon the principal and sureties for the faithful discharge of all duties required by law of such principal. The order of the court in the partition suit directed the referees to sell the "land as provided by law and bring the proceeds into court." Bringing money into court, says Bouvier, is "the act of depositing money in the hands of the proper officer of the

court for the purpose of satisfying a debt or duty." See 1 Bouvier, Law Dictionary, 267. That the clerk of the court is the proper custodian of the money paid into court in pursuance of an order or judgment of the court is a proposition upon which, so far as we know, there is no diversity of judicial opinion. See *McDonald v. Atkins*, 13 Nebr., 568; *Moore v. Boyer*, 52 Nebr., 446; *Commercial Investment Co. v. Peck*, 53 Nebr., 204; *State v. Watson*, 38 Ark., 96; *Walters-Oates v. Wilkinson*, 92 Ia., 129; 6 Am. & Eng. Ency. Law [2d ed.], 142.

After confirmation of the sale in the partition suit it was entirely proper for the court to discharge the referees. They were appointed to make partition, and not for the purpose of acting for an indefinite period as custodians of a fund which might come into their hands in consequence of being obliged to make a sale, instead of a division, of the property. It was never contemplated that the custodianship of referees should in every case continue until all the owners and incumbrancers should call for and receive their shares of the proceeds of the sale. See *Walters-Oates v. Wilkinson, supra*. Mrs. Dirks was an absent owner, and by the express terms of section 844 of the Code of Civil Procedure the court was directed to hold her share, or invest it for her benefit. The law imposed upon Juel, as clerk, the duty of receiving the money which the court directed the referees to pay in; and it imposed upon him the further duty of holding such money in his official capacity, and accounting for it to the persons to whom it belonged. This being so, it is clear, on the conceded facts, that the plaintiff's money was lost through official misconduct, for which the defendants must answer if the default occurred during the first term. It appears that Juel had to his credit in the Carson National Bank at the commencement of his second term more than the amount due from him to Mrs. Dirks, and that he expressed at one time a willingness to pay her out of the funds on deposit in the bank. The defendants contend that, although the money paid into

court by the referees was deposited by Juel to his personal credit, it was, nevertheless, the plaintiff's money; that it was still in the bank after the expiration of Juel's first term, and that the plaintiff might have then claimed and received it. We concede all this; but do not accept the defendants' conclusion that the sureties on the first bond are, therefore, exonerated.

While the fund might be traced and identified as the property of the plaintiff, a court would, at her instance, impress it with a trust in her favor. But she was not obliged to pursue the fund. By depositing plaintiff's money to his individual credit Juel converted the money to his own use, and plaintiff had a right to sue him and the sureties on his bond for conversion. She had an election of remedies, and she has chosen to proceed against the defendants for the wrongful act of their principal. According to all the authorities, the act of Juel in dealing with the proceeds of the partition sale was wrongful, and constituted a technical conversion, entirely irrespective of his intentions. The rule is that a trustee who deposits trust funds in a bank to his own private account is, in the absence of special authority so to do, guilty of conversion. See *School District v. First Nat. Bank*, 102 Mass., 174; *Pine County v. Willard*, 39 N. W. Rep. [Minn.], 71; *Williams v. Williams*, 55 Wis., 300; *Hammon v. Cottle*, 6 S. & R. [Pa.], 290; *Cartmell v. Allard*, 7 Bush [Ky.], 482; *Bartlett v. Hamilton*, 46 Me., 435. In *Commonwealth v. McAllister*, 28 Pa. St., 480, it is said that if a trustee depositing trust funds in a bank wishes to avoid liability as a wrong-doer, the entry must go down in the books of the institution in such terms as not to be misunderstood that they are the funds of the specific trust to which they belong. In *Naltner v. Dolan*, 108 Ind., 500, it was held that if the trustee puts the trust fund in such shape as to invest himself with the legal title to it, the *cestui que trust* has his election to treat the fund as belonging to the trustee, and regard the latter as his debtor, or else to assert ownership in himself.

Whatever may have been the intention of Juel, he did not preserve the trust character of the fund in question. He invested himself with the legal title to plaintiff's money, and this act constituted a breach of his official bond. The judgment is reversed, and the cause remanded.

REVERSED AND REMANDED.