## *In re* FINKS.

*(District Court, W. D. Virginia. September 7, 1889.)*

**OFFICIAL BONDS—CLERK OF COURT—LIABILITY OF SURETIES.**
    The sureties on the bond of the clerk of a district court, conditioned that he shall "properly account for all money coming into his hands" as required by law, are liable for his misappropriation of money paid to him as clerk, under order of court, though such order is based upon the practice of the court, and not upon direct statutory authority.

In Bankruptcy.
*Geo. E. Sipe* and *J. B. Stephenson*, for creditors of bankrupt.
*Leiggert & Strayer*, for sureties on bond of the clerk.

PAUL, J. The question submitted to the court in this case for decision is the liability of W. B. Lurty, late clerk of this court, and his sure-

ties for money paid to him during the proceedings in bankruptcy by certain purchasers of real estate surrendered by the bankrupt, and sold in August, 1878. The money was paid under the following provisions of decrees entered in the cause:

A decree entered September 17, 1878, provided:

"This cause coming on this day to be heard on the report of sales of the real estate of M. F. Finks, bankrupt, made on the 16th day of August, 1878, in pursuance of a decree heretofore entered in this cause, was argued by counsel, and, it having been suggested to the court that in the decree ordering a sale it was inadvertently omitted to appoint a receiver to collect the cash payments, it is adjudged and ordered that John C. Sims and N. B. Early, two of the purchasers of said real estate, pay over to the said clerk of the district court at Harrisonburg, Va., to be passed by him to one of the depositories of this court, to the credit of this cause, the respective cash payments due by them, viz.: N. B. Early, the sum of $671.87½ and John C. Sims, $1,542.00."

A decree entered October 16, 1878, provided that the assignee, on—

"Executing his bond in this cause, in penalty of double the amount of money to be received by him, conditioned according to law, is authorized to withdraw from the papers the bonds of the several purchasers, and collect the same as they fall due, and disburse as herein provided; or, in default of the execution of such bond by the assignee, the purchasers may pay into court the amount of their bonds as they fall due, the clerk to disburse as hereinbefore provided."

Under these decrees the said clerk received nearly $7,000 of the purchase money for the real estate sold in this cause, and on a settlement of his accounts in connection with this fund by a special master, to whom the cause was referred, the master reports an indebtedness on the part of the clerk of $1,322.30, as of August 1, 1884. The master makes an alternate statement, by which he reduces this amount $355.05, by charging the Bank of Rockingham with certain checks given by W. B. Lurty, which the commissioner says were improperly paid by that bank. To this alternate report exceptions are filed by counsel of creditors of the bankrupt.

The supreme court of the United States, in general orders in bankruptcy, adopted April 12, 1875, provides in order 28:

"The district court in each district shall designate certain national banks, if there are any within the judicial district, or, if there are none, then some other safe depository, in which all moneys received by assignees or paid into the court in the course of any proceedings in bankruptcy shall be deposited; and every assignee, and the clerk of said court, shall deposit all sums received by them severally, on account of any bankrupt's estate, in one designated depository; and every clerk shall make a report to the court of the funds received by him, and of deposits made by him on the first Monday of every month."

The assignee is required to make a report on the first day of each month to the register, showing, if any, what collections, deposits, or payments have been made by him during the preceding month.

It further provides:

"No moneys so deposited shall be drawn from such depositories unless upon a check or warrant signed by the clerk of the court or by an assignee, and counter-signed by the judge of the court, or one of the registers designated for that purpose, stating the date, the sum, and the account for which it is

drawn; and an entry of the substance of such check or warrant, with the date thereof, the sum drawn for, and the account for which it is drawn, shall be forthwith made in a book kept for that purpose by the assignee or the clerk, and all checks and drafts shall be entered in the order of time in which they are drawn."

At the time the money received in this case by the clerk was paid him, as far as can be ascertained from the records filed in this case, the depository designated by the court was the First National Bank of Lynchburg. Two affidavits have been recently filed, tending to show that an order had been passed by Judge Rives, designating the Rockingham Bank at Harrisonburg as a depository, but no record evidence of the fact has been adduced. A part of the first money paid to the clerk, September 30, 1878, was deposited in the First National Bank of Lynchburg, but deposits from subsequent payments were made in the Rockingham Bank, and a balance remaining in the First National Bank of Lynchburg was, in October, 1879, withdrawn from that bank and deposited in the Rockingham Rank. The dealings of the clerk, it will be seen, were not in conformity with the requirements of order 28 of general orders in bankruptcy; but a portion of the money paid to the clerk was passed by him to one of the depositories of the court, as required by the decree of September 17, 1878, and by rule 28. No report was made to the court by the clerk of the funds received by him, and of deposits made by him on the first Monday of every month. The money was not passed by the clerk to the credit of the cause of M. F. Finks, bankrupt, as required by the decree, but was deposited to the credit of the clerk, as "receiver in M. F. Finks, bankrupt." None of the checks or warrants given by the clerk on the fund were "counter-signed by the judge of the court, or one of the registers designated for that purpose." A considerable amount of the money received was not deposited in bank, and the clerk gave several individual checks on the fund, and they were paid out of it.

The position of the master, that the securities cannot be held liable for these individual checks, and that the bank is chargeable therewith, cannot be maintained in this proceeding. The bank is not a party to it, and, whatever may be its ultimate liability to the sureties, if any, is a question that cannot be considered in the present *status* of this case.

Counsel for the sureties on the clerk's official bond contend that no liability rests on them for the failure of the clerk to properly account for the money received by him in this case, because they say the court had no power to appoint the clerk receiver of a fund paid into the court; that the undertaking of the sureties extended only to the duties of the clerk, as clerk, and not those of a receiver. However the clerk may have designated himself in opening a bank account with this fund, and in giving checks upon it, and however he may have been designated in subsequent decrees and orders, the decrees directing the money to be paid to him directed it to be paid to him as clerk of this court, to be passed by him to the credit of the cause. No subsequent decree in the cause changed this relation. Had the court appointed him a special receiver in the cause, it would have required bond of him as such.

The position taken by counsel for the sureties, and urged with so much ability, that the clerk is a statutory officer; that all of his duties are statutory; that no duty can be imposed upon him unless the same is prescribed by statute,—is not correct. There are numerous duties required of him, and that he daily performs, that have no statutory origin. They are incidents to the office,—necessary powers conferred on the court by reason of its existence. They have become fixed and established rules of practice in the United States courts, though no statute or written rule of court has ever declared them to be so. The payment of money into the registry of the court, through the clerk as the servant and agent of the court, where there is a fund under the control of the court, where there is no hand designated to receive it, has been in existence from the foundation of the courts, and is too firmly fixed to be successfully assailed as not being authorized by any act of congress or rule of court prescribed in pursuance of an act of congress.

In *Duncan's Heirs* v. *U. S.*, 7 Pet. 445, the court says:

"It is not essential that any court, in establishing or changing its practice, shall do so by the adoption of written rules. Its practice may be established by a uniform mode of proceeding for a series of years, and this forms the law of the court."

See, also 2 Myer's Fed. Dec. § 1334.

See *Grayson* v. *Virginia*, 3 Dall. 320, decided in 1796, where the court said:

"The general rule prescribes to us an adoption of that practice which is founded on the custom and usage of courts of admiralty and equity, constituted on similar principles."

Rule 28 itself recognizes the existence of this practice of paying money into the registry of the court through the clerk, as the court's agent, and imposes no new duties, only directs how existing ones shall be performed.

Section 828, Rev. St. U. S., provides that the clerk shall have, "for receiving, keeping, and paying out money in pursuance of any statute or order of court, one per centum on the amount so received, kept, and paid." This provision recognizes it as one of the duties of the clerk, as an officer of the court, to receive, keep, and pay out money in pursuance of orders of the court. This compensation of 1 per centum does not, as counsel for sureties contend, apply to the $50 deposit for fees in a bankrupt case. The statute allowing it was passed in 1853, after the repeal of the bankrupt act of 1841, and before the passage of that of 1867. There was no bankrupt law in existence at the time of its passage.

It is one of the conditions of the official bond of the clerk that he shall "properly account for all money coming into his hands," as required by law, and, he having failed to do so in this case, the court is of opinion that the sureties on his official bond are bound for the deficit. A decree will be entered accordingly. The exceptions filed by the creditors to the master's report must be sustained. The compensation to be allowed the clerk is not that prescribed for assignees in section 5100, Rev. St., but that fixed in the statute prescribing clerk's fees, (section 828, Rev. St.)