UNITED STATES ex rel. STEWART v. HOWARD et al.

(Circuit Court, W. D. Missouri, W. D. April 25, 1899.)

1. CLERKS OF CIRCUIT COURTS—BONDS—RIGHT OF INDIVIDUAL TO SUE ON AS RELATOR.

The bond required from a clerk of a circuit court of the United States by Rev. St. § 795, conditioned generally for the faithful discharge of the duties of his office, among which are receiving, keeping, and paying out money pursuant to the requirements of the statutes and the orders of the court, which money, from the nature of the court's jurisdiction and its practical exercise, is necessarily largely that of private suitors, must be held by legal intendment to have been provided for the protection of such suitors, as well as of the government, and the statutes by implication authorize a suitor to put the bond in suit in the name of the United States, to his use, for the redress of wrongs within its purview.

2. SAME—RECEIPT OF MONEY IN OFFICIAL CAPACITY—ORDER OF COURT.

A recital in the record of a circuit court in a cause, signed by the judge, that a sum of money tendered to the plaintiff by the defendant's pleading had been paid into court, when it was in fact paid to the clerk on the same day, is a sanction of the payment by the court at the time, which is equivalent to an express order for its receipt, and, coupled with further recitals in the record during the progress of the cause treating the money as in the custody of the court, shows that it was in the hands of the clerk in his official capacity, and he is liable on his bond for its misapplication.

3. SAME—FAILURE TO DEPOSIT MONEY IN REGISTRY OF COURT.

The facts that the statutes of the United States (Rev. St. §§ 995, 996) require all money paid into any federal court or received by its officers in any cause to be at once paid into the registry of the court, to be drawn out only on an order of a judge, and that a clerk, in violation of such provisions, failed to deposit money so received by him, but appropriated it to his own use, constitute no defense to an action against the sureties on his official bond for its recovery.

4. SAME—RIGHT OF ACTION ON BOND.

A judgment in favor of a plaintiff for the amount of a tender made by defendant, where the money had been paid into court, vests the plaintiff with the right to such money and all legal remedies for its enforcement, and he may maintain an action on the bond of the clerk for its misappropriation.

This is an action by the United States, at the relation and to the use of David D. Stewart, against Frederick Howard and others on a bond given to the United States.

J. V. C. Karnes, L. C. Krauthoff, and New & Krauthoff, for plaintiff.

Sanford B. Ladd, Frank Hagerman, and Danl. B. Holmes, for defendants.

ADAMS, District Judge. This is a suit instituted against the defendants, as sureties on the official bond of the late Warren Watson, as clerk of this court, to recover a sum of money alleged to have been deposited with him as such clerk by Henry county, Mo., on the 3d day of March, 1891, in a suit then pending in this court, in which the relator was plaintiff and Henry county was defendant, and to have been afterwards embezzled by him. The defenses are two: First, that the relator is not authorized to sue on the bond in question, because the United States of America is the sole obligee, and no statute of the United States authorizes a suit thereon at the relation or to the use of an individual; second, that the clerk did not take possession of the money tendered by virtue of his office as such clerk.

These two defenses will be considered in the order stated.

Section 795 of the Revised Statutes of the United States provides as follows:

"The clerk of every court shall give bond in the sum to be fixed and with sureties to be approved by the court which appoints him, faithfully to discharge the duties of his office and seasonably to record the decrees, judgments and determinations of the court of which he is clerk."

No language is here found which expressly authorizes any person who may be wronged by the act of the clerk to resort to this bond or to use the name of the obligee, the United States of America, in a suit on the bond to his use, for the redress of his wrong, but the question arises whether such right is given by necessary legal intendment. The bond, with the condition as found in the statute, is the only one which can be required of a clerk of this court. U. S. v. Tingey, 5 Pet. 115. It must be observed at the outset that this condition is comprehensive in its scope, and manifestly contemplates a security for the discharge, on the part of the clerk, of all such duties as the law imposes upon him. Among these duties are receiving, keeping, and paying out money pursuant to the requirements of a statute or an order of court. Such duties are imposed by sections 995 and 996 of the Revised Statutes of the United States. It is true the duty is imposed on the clerk, whenever he receives money, to forthwith deposit the same in the registry of the court in the name and to the credit of the court; but it clearly appears from the statutes just referred to that it is made the duty of the clerk to receive money, to deposit money in the registry of the court, and to pay it out only as and when ordered by the court. For the faithful performance of these duties, and each of them, the bond is required of the clerk, and the sureties on such bonds become the clerk's sponsors therefor. Now, it is well known, both from the character of the jurisdiction conferred upon circuit courts, as well as from the practical administration and exercise

of such jurisdiction, that the money involved in litigation in such courts belongs almost exclusively to individual suitors, and rarely ever to the United States. It is the district court which affords the usual jurisdiction for asserting the rights or redressing the wrongs of the United States as such. So far as the clerks of circuit courts are concerned, their duties, with respect to receiving, depositing, and paying out money, concern mainly individual suitors other than the United States. The condition of the bond in question should therefore be construed in the light of these facts, and, when legislative authority is conferred to require from a clerk a bond conditioned for the faithful discharge of his duties, it is not doubted that the legislature intended that the obligation of such bond should have relation, at least, to that duty which, above all others, requires a guaranty for its faithful performance, namely, the faithful accounting for moneys which may come into the clerk's hands by virtue of his office. Such duties and obligations being imposed upon the clerk, the bond required of him ought, if possible, to be commensurate therewith.

It is held in the case of Washington Corp. v. Young, 10 Wheat. 406, that no person can be authorized to use the name of another without his assent, given in fact or by legal intendment. It is my opinion that, in imposing upon clerks of the circuit court the duties above alluded to, which so necessarily and vitally affect the interests of suitors in its courts, and in requiring from such clerk a bond for the faithful discharge of such duties, the United States, by necessary legal intendment, thereby consents to the use of its name by suitors wronged by official misconduct of the clerk, in a suit against the clerk or his sureties on his official bond. This implied authority or necessary legal intendment becomes the more apparent when it is considered that the clerk's office is an agency of the United States government, ordained and established for the use and convenience of its people. The money intrusted to its clerk is, in a large sense, money which the government has undertaken to keep for its people. When, therefore, the clerk, by official misconduct, embezzles or misappropriates such money, even though perhaps the government may not be subjected to a suit for its recovery, it clearly owes a highly moral and meritorious obligation to the loser, in the nature of a responsibility for the act and misconduct of its agent, and one which the national congress might regard as sufficient to move it to a private act for his relief.

Considering all these things, it seems unreasonable to say that all congress intended, by providing for a bond from clerks of the circuit court, was to secure the United States itself against damage by official misconduct. On the contrary, the language of the act, construed in the light of the duties imposed upon the clerk, and in the light of the obligations of the United States in the performance of its governmental functions connected therewith, conduces plainly to the result that such bond is intended for security for all suitors in this court, and, being so intended, an implied authority necessarily arises permitting such suitor to put the bond in suit in the name of the United States, to his use, for the redress of wrongs within the purview of the bond.

The next question to be considered is whether Clerk Watson had the money in question in his possession by virtue of his office as clerk. It is contended that it was intrusted to him by Henry county to keep good a tender before that time made, and much research and learning have been exhibited to show that this was but a private or personal transaction between the clerk, as an individual, and Henry county, and that the money was never in custodia legis, and never in the hands of the clerk by virtue of his office. It is contended that the statutes of the state of Missouri (sections 2937 and 2939) in relation to tender have no application, under the federal statutes in relation to costs and the practice in the federal court, to the facts of this case. To all these suggestions, and to all the authorities relied upon, I have given attentive consideration, but there is one view of the facts which, in my opinion, is conclusive of the question now under consideration. The money appears to have been received by the clerk with such sanction of the court as, in my mind, is equivalent to an order to that effect made by the court. The facts disclosed by the agreed statement are as follows:

Henry county having, before the suit was brought against it by Stewart, made a tender of a certain amount in full satisfaction of the cause of action sued upon, when it came to answer the petition of Stewart in this court alleged as follows:

"And defendant says it at all times has been ready and willing to pay plaintiff said sum ($2,525), and now here again tenders to plaintiff said sum in full payment of said bonds and unpaid interest due thereon, * * * and now brings the said sum into court."

This answer was filed on March 3, 1891. On the same day there was entered on the records of the court the following:

"This day comes defendant, by its attorney, and files answer, and tenders to plaintiff and deposits with the clerk the sum of $2,525 in payment and satisfaction of his cause of action in the petition set forth."

It further appears as a fact that on said 3d day of March, 1891, Henry county did hand to Warren Watson, clerk, the sum of $2,525 as in said pleading and entry of record stated. It further appears that after reply was filed in due course, and on July 2, 1894, the following proceedings were had in said cause: A jury having been waived, the hearing was proceeded with, the evidence heard, and the cause submitted to the court; and afterwards, on February 11, 1895, the following further proceedings were had and entered of record in said cause, that is to say:

"A jury having heretofore been waived in writing by the parties hereto, and this cause having been submitted to the court on the pleadings and evidence and arguments of counsel, and taken under advisement by the court, and the court being now fully advised in the premises, doth find the issues as follows, to wit: On the first count of the petition the court finds that the principal and interest on bond No. 204 was duly tendered by defendant at the place of payment, on the 1st day of September, 1887; and that after the plaintiff instituted this action in this court, and at the filing of the answer herein, the defendant duly paid said sum into court for the use and benefit of the plaintiff, and that plaintiff is entitled to judgment therefor on the first count of the petition in the sum of $1,010."

The findings as to the second and third counts are precisely similar to the one just now quoted, except as to the amounts, the second count

being for $1,010, and the third being for $505. The judgment of the court, after finding such facts, proceeds as follows:

"It is therefore ordered and adjudged by the court that the plaintiff have judgment for the recovery of the sum of $2,525, the aggregate amount found to be owing him under the three counts of the petition, and that the plaintiff pay the costs of this action, and that execution issue therefor. And it further appearing to the court that the said sum of $2,525 so paid into court as aforesaid was paid to and received by Warren Watson, the then clerk of this court, who has since departed this life without having accounted for said sum of money so received by him as said clerk, and that said money has never been turned over to his successor, the present clerk of this court, nor has the same been otherwise accounted for by said Warren Watson as clerk or otherwise, it is found and adjudged by the court that the plaintiff is entitled to have and recover said money so received by said Warren Watson as clerk aforesaid, and plaintiff is authorized to proceed therefor on the bond of said Warren Watson given as clerk aforesaid."

The authorities show, and it is conceded to be the law governing this case, that the money in question must have been delivered to the clerk by some direction of the court, in order to be so in his possession by virtue of his office as to render his sureties liable for its misapplication; but I cannot construe the facts set forth above, as they appear in the pleadings, record, and judgment in the case of Stewart v. Henry Co., without being brought irresistibly to the conclusion that said money was paid to the clerk with such sanction of the court at the time as is equivalent to an express order to that effect. It is common knowledge that the record book is the mouthpiece of the court. It is under the direct control of the court, and no entry is made without the sanction of the court. In fact, it appeared affirmatively at the hearing of this case that the record of proceedings on March 3, 1891, showing a deposit of the money in question with the clerk, was signed by the judge of the court. The subsequent record entries in the case show that the court at all times regarded the money as under its control. It would be sticking in the bark, ignoring altogether the substance of things, to hold that the record in that case does not disclose the taking of the money in question into judicial custody.

But it is said that, under the Statutes of the United States (sections 995 and 996), it is not lawful to deposit money with the clerk, and that, therefore, Clerk Watson did not have possession of the money in question under the law, and hence not at all. Section 995 reads as follows:

"All moneys paid into any court of the United States or received by the officers thereof in any cause pending or adjudicated in such court, shall be forthwith deposited with the treasurer or assistant treasurer or a designated depositary of the United States in the name and to the credit of such court."

Section 996 reads as follows:

"No money deposited as aforesaid shall be withdrawn except by order of the judge or judges of said courts respectively, in term or in vacation, to be signed by such judge or judges and to be entered and certified of record by the clerk, and every such order shall state the cause in or on account of which it is drawn."

These sections clearly deal with the custody of money after the same may have been received by the officers of the court. In other

words, they cannot be construed as a prohibition upon receiving money by the officers of the court. The very language of section 995 makes this clear. It refers to moneys which may be "received by the officers" of the court. This is further made clear by the fact that the court acts alone through its officers, and I know of no method of taking money into legal custody except by and through the instrumentality of the court's officers. It is common practice, when the court is about to take money into judicial custody, to order it paid to the clerk. His duty then arises, under section 995 above quoted, to deposit it forthwith in the registry of the court. If he fails to do so, he violates his duty, and this is exactly what Clerk Watson did. On receipt of the money in question, he was required by law to forthwith deposit it in the registry of the court. Instead of doing so, he deposited it to his individual credit in some bank where he was keeping his individual account. He thereby violated the law, failed to perform his duty as clerk, and his subsequent use of the money for his own private purposes is but further evidence of his conversion of the same to his own use. When the court subsequently rendered final judgment in the case of Stewart v. Henry County it practically ordered this money to be paid to the plaintiff. The right to said money, and all legal remedies for the enforcement of the right, were thus vested in the plaintiff. It may or may not be, as claimed by defendant's counsel (as to which I express no opinion), that plaintiff has a present subsisting right enforceable against Henry county for the payment of his judgment. The assertion of such right, if it exists, would be grossly inequitable, and the court is not inclined to so rule this case as to unnecessarily invite such proceeding. It results that plaintiff is entitled to judgment for the penalty of the bond, with an assessment of damages in the sum of $2,525, with interest thereon from the date of the institution of this suit at the rate of 6 per cent. per annum.