## HOWARD et al. v. UNITED STATES et al.

### (Circuit Court of Appeals, Eighth Circuit. April 9, 1900.)

### No. 1,288.

1. CLERKS OF CIRCUIT COURTS—BONDS—PROTECTION OF PRIVATE SUITORS.

The bond of a clerk of the circuit court, required by statute, and conditioned "faithfully to discharge the duties of his office," though given to the United States, is for the protection of private suitors no less than the United States, and the condition embraces every duty and obligation imposed on the clerk by law or the lawful order, usage, and practice of the court.

2. SAME—BREACH OF CONDITION OF BOND—MONEY RECEIVED IN OFFICIAL CAPACITY.

A party to a civil action in a circuit court has the right, on filing a pleading making a tender, to pay the money necessary to make such tender good into court, no order authorizing such payment being required, and it is the duty of the clerk to receive such money in his official capacity; and, being money received by him "in a cause pending in such court," he is required by Rev. St. § 995, to forthwith deposit the same in the registry of the court. A failure on his part to so deposit the money, or to pay it over to the party entitled thereto by the order of the court, is a breach of the condition of his bond, for which his sureties are liable to the person suffering damage thereby.

3. SAME—SUIT ON BOND—RIGHT TO USE NAME OF UNITED STATES.

The statute, having required the giving of a bond by each clerk of a circuit court, intended for the security of all suitors in such court, by implication authorizes any suitor who is injured by reason of the official misconduct of the clerk to put such bond in suit in the name of the United States to his use, for the redress of such injury.

4. APPEAL—FORMAL ERRORS AS TO PARTIES—AMENDMENT.

The fact alone that an action was brought in the name of the wrong party as plaintiff is not ground for reversal, but the appellate court will direct the substitution of the proper party.

In Error to the Circuit Court of the United States for the Western District of Missouri.

By stipulation in writing the parties waived a jury, and tried this action before the court on the following agreed statement of facts:

"It is agreed between the parties hereto that the facts herein are as follows:

"(1) Upon March 3, 1887, Warren Watson was appointed clerk of the United States circuit court for the Western division of the Western district of Missouri, and acted as such from that date until his death, which occurred on the 24th day of March, 1892. Upon March 3, 1887, Warren Watson, with these defendants, executed his bond as such clerk, in words and figures as follows:

"'Know all men by these presents, that we, Warren Watson, Frederick Howard, John Cutter Gage, James Lewis Lombard, Witten McDonald, of the city of Kansas City, in the county of Jackson, state of Missouri, are held and firmly bound unto the United States of America in the sum of twenty thousand dollars, lawful money of the said United States, to be paid to the said United States, for which payment well and truly to be made we bind ourselves, our heirs, executors, and administrators, jointly and severally, firmly by these presents. Signed with our hands, and sealed with our seals, this 3d day of March, 1887. The condition of the above obligation is such, whereas, the said Warren Watson has, pursuant to law, been appointed to be clerk of the circuit court of the United States for the Western division of the Western district of

Missouri, as by order of appointment bearing date the 3d day of March, 1887, and recorded on page 70 of Book "Law D" of the records of said court, will more fully appear: Now, if the said Warren Watson, by himself and by his deputies, shall faithfully perform all the duties of the said office of clerk, and seasonably record the decrees, judgments, and determinations of said court, then this obligation to be void; otherwise, to remain in full force and virtue.

| | |
|---|---|
| " 'Warren Watson. | [Seal.] |
| " 'Frederick Howard. | [Seal.] |
| " 'John Cutter Gage. | [Seal.] |
| " 'James Lewis Lombard. | [Seal.] |
| " 'Witten McDonald. | [Seal.] |

" 'Approved: A. Krekel, Judge.'

"This is the same bond mentioned in the petition and copied in the answer, and was the only bond ever executed by defendants, or on behalf of Watson as such clerk. It was at the time of its execution approved by A. Krekel, a then judge of the said court, who indorsed his approval thereon, and each of the parties to said bond qualified in writing as to the amount of property owned by each, which qualification was filed with said bond.

"(2) Warren Watson was a resident of Jackson county, Missouri, and, while still acting as such clerk, died, on the 24th day of March, 1892, and on the 2d day of April, 1892, Fred W. Perkins was, by the probate court of said county, duly appointed as his administrator, and as such, on the 5th day of April, 1892, gave the notices required by the statutes of Missouri for the presentation of claims against said Watson's estate. On the 11th day of September, 1894, said estate, having been completely administered upon, was closed, and the administrator discharged. At no time did the United States or David D. Stewart, the relator, ever exhibit or present any demand or claim against said estate in said probate proceedings, or as provided by the laws of Missouri for exhibiting or presenting claims against the estates of decedents. The amount of demands allowed against the estate of said Warren Watson and assigned to the fifth class is $2,730.91, and on this sum there was paid a dividend of .331 per cent., or, in the aggregate, $90.41, and no more.

"(3) On February 6, 1891, the relator, David D. Stewart, as plaintiff, instituted in said United States circuit court his suit at law against Henry county, Missouri, in which his causes of action were set forth in a petition containing three counts, the first asking a judgment for $1,010, with interest from the 1st day of September, 1887, on a bond of defendant for $1,000, dated July 1, 1882, payable at the National Bank of Commerce of New York on July 1, 1892, with six per cent. interest, evidenced by coupons, but at the option of the county the bond was payable at any time after July 1, 1887. The second count was upon a similar bond for $1,000, and the third was on a like bond for $500. On March 3, 1891, defendant, Henry county, filed in said cause its answer, said answer as to each of the first and second counts being that on September 6, 1887, there was due on said bond $1,010, and on that date it deposited that sum in the National Bank of Commerce of New York for the payment of the bond and interest, and on September 6, 1887, tendered that sum to the plaintiff as full payment of the bond and interest thereon, but plaintiff refused to accept same, 'and defendant says it has at all times been ready and willing to pay plaintiff said sum of $1,010 in full payment of said bond and unpaid interest, and now here again tenders to plaintiff said sum of $1,010 in full payment of said bond and unpaid interest due thereon on September 6, 1887, and now brings the said sum into court.' The answer to the third count was exactly the same, except that the amount named was $505, instead of $1,010. Upon March 3, 1891, there was entered on the records of said court the following: 'This day comes defendant, by its attorney, and files answer, and tenders to the plaintiff, and deposits with the clerk, the sum of $2,525 in payment and satisfaction of his cause of action in the petition set forth. Thereupon a stipulation waiving a trial by jury is filed herein.' On June 27, 1891, the plaintiff in said suit filed his reply, which was a general denial. On July 2, 1894, there was entered on the records of said court the following: 'This day come the parties by their attorneys, the plaintiff by Karnes, Holmes & Krauthoff, and the defendant by M. A. Fyke, and, a stipulation waiving a jury having been heretofore filed herein, the hearing of this cause is proceeded with before the

court. Thereupon evidence is heard, and the case is submitted to the court, and by the court taken under advisement, with leave to the parties to file briefs.' On February 11, 1895, there was entered on the records of said court the following: 'A jury having heretofore been waived in writing by the parties hereto, and this cause having been submitted to the court on the pleadings and evidence and arguments of counsel, and taken under advisement by the court, and the court, being now fully advised in the premises, doth find the issues as follows, to wit: On the first count of the petition the court finds that the principal and interest on bond No. 204 was duly tendered by defendant at the place of payment on the 1st day of September, 1887, and that after the plaintiff instituted this action in this court, and at the filing of the answer herein, the defendant duly paid said sum into court for the use and benefit of plaintiff, and that plaintiff is entitled to judgment therefor on the first count of the petition in the sum of $1,010. [The findings as to the second and third counts are precisely similar, except as to the amounts; the second count being $1,010, and the third $505.] It is therefore ordered and adjudged by the court that the plaintiff have judgment for the recovery of the sum of twenty-five hundred and twenty-five dollars ($2,525), the aggregate amount found to be owing to him under the three counts of the petition, and that plaintiff pay the costs of this action, and that execution issue therefor. And it further appearing to the court that the said sum of $2,525 so paid into court as aforesaid was paid and received by Warren Watson, the then clerk of this court, who has since departed this life without having accounted for said sum of money so received by him as said clerk, and that said money has never been turned over to his successor in office, the present clerk of this court, nor has the same been otherwise accounted for by said Warren Watson as clerk or otherwise, it is found and adjudged by the court that the plaintiff is entitled to have and recover said money so received by said Warren Watson as clerk aforesaid, and plaintiff is authorized to proceed therefor on the bond of said Warren Watson given as clerk as aforesaid.' No appeal was taken from this judgment, and the same has become final, and remains in full force and effect, and unpaid.

"(4) On March 3, 1891, Henry county did hand to Warren Watson the sum of $2,525 as in said entry of that date recited. No order or direction of the court as to this money was ever made, had, or obtained, and no entry in reference to the same was ever made, except as set out in paragraph 3. When the $2,525 was so paid to said Warren Watson, he, on the same day, deposited the same in a bank to his own credit, and at no time did he treat the money as in the depository of the court. He never at any time presented any account to the court of such money, and has never paid it to Henry county or David Stewart, and never during the pendency of the suit of Stewart v. Henry County did either party take any steps towards having any order made in relation to the said money, other than was actually made, nor make any objection to the method in which said money was received. David D. Stewart had no knowledge of said acts of Warren Watson.

"(5) At no time was demand made on these defendants or Warren Watson for said money, other than is to be inferred from the institution of the suit.

"(6) A jury is waived, and the answer of defendants shall be regarded as verified.

"The above and foregoing are all the facts in the case, and are to be taken subject to objections by either party as to their relevancy and competency."

On consideration of the agreed statement of facts the circuit court found the issues for the relator, and rendered a judgment against the defendants for the amount claimed. The opinion of the learned trial judge is reported in 93 Fed. 719. The defendants sued out this writ of error.

Frank Hagerman (Sanford B. Ladd and Willard P. Hall, on the brief), for plaintiffs in error.

Edwin A. Krauthoff (J. V. C. Karnes, Alexander New, and David D. Stewart, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge (after stating the facts as above). The first contention of the plaintiff in error is that the bond required to be given by a clerk of the United States circuit court is intended "solely for the protection of the United States, and not at all for the protection of private suitors." From the organization of the judicial system of the United States the condition of the clerk's bond has been the same. The judiciary act of 1789 required the clerk to "give bond with sufficient sureties to the United States in the sum of $2,000 faithfully to discharge the duties of his office and seasonably to record the decrees, judgments and determinations of the court of which he is clerk." As the business in these courts increased, provision was made by which the penalty of the bond could be correspondingly increased. By section 795 of the Revised Statutes of the United States the penalty of the bond was "to be fixed by the court," and by the later act of February 22, 1875 (18 Stat. 333, c. 95, § 1), the penalty of the bond is fixed at "not less than $5,000 and not more than $20,000, to be determined and regulated by the attorney general of the United States." Very curiously, section 795 of the Revised Statutes omitted to name any obligee in the bond. This omission, however, in no manner affected the validity of the bond, for with or without a named obligee the bond was a valid security to any one injured by a breach of its conditions. Carnegie, Phipps & Co. v. Hulbert, 36 U. S. App. 81, 16 C. C. A. 498, 70 Fed. 209. This omission was remedied by the act of 1875, which requires the bond to be given "to the United States," as did the judiciary act of 1789, but the condition of the bond has remained the same under all the acts. If the contention of the plaintiff in error is sound that the bond is intended "solely for the protection of the United States, and not at all for the protection of private suitors," then no act on the part of the clerk in the discharge of his official duties which results in loss or injury to a private suitor in the court would render him liable therefor in his official capacity. He might with impunity refuse "to record the decrees, judgments, and determinations of the court" in favor of private suitors without incurring official responsibility on himself, or imposing liability on his sureties for such neglect of duty. If the statute was made to express the construction contended for, the condition would read, "faithfully to discharge the duties of his office so far forth as they concern the United States only, and seasonably to record the decrees, judgments, and determinations of the court in cases in which the United States only is interested." Obviously, the court cannot ingraft any such limitations on the conditions of the bond. The United States is named as the obligee in the clerk's bond, as is done in the case of the marshal's bond and the bonds of other officers of the United States; but the bond is given for the indemnity of any one (the United States no more than any private suitor) who suffers loss through his official misconduct or delinquency,—any one suffering loss by the breach of the covenant of his bond "faithfully to discharge the duties of his office." This comprehensive condition embraces every duty and obligation imposed on him by law or the lawful order, usage, and practice of the court. Grady v. U. S., 39 C. C. A. 42, 98 Fed. 238. Section 995 of the Revised Statutes of the United States provides:

"All moneys paid into any court of the United States, or received by the officers thereof, in any cause pending or adjudicated in such court, shall be forthwith deposited with the treasurer, an assistant treasurer, or a designated depository of the United States, in the name and to the credit of such court. provided, that nothing herein shall be construed to prevent the delivery of any such money upon security, according to agreement of parties, under the direction of the court."

When a clerk receives money in his official capacity he does not "faithfully discharge his duty" in respect to such money unless he "forthwith" deposits it in conformity with the requirements of this section. And much less does he comply with the obligation of the bond when he not only fails to deposit it as required by law, but fails to produce and pay it over to the party entitled to it under the order of the court. The section quoted has been the law since 1817 (Act March 3, 1817 [3 Stat. 379]), save in the name of the depositories. The statutes of the United States plainly contemplate that the clerk will receive in his official capacity moneys belonging to private suitors. Provision is made for loaning out moneys in the registry of the court "according to the agreement of the parties," and the parties here meant are private suitors, as the government does not loan her money in this way. The moneys belonging to the United States arising under the internal revenue laws of the United States which come into the hands of the clerk are required to be paid to the collector of internal revenue for the district (section 3216, Rev. St.; Instructions of Attorney General, 133), and all other moneys coming into the hands of the clerk belonging to the United States are required to be "promptly covered into the treasury" (Id.). Section 798, Id., provides:

"At each regular session of any court of the United States, the clerk shall present to the court an account of all moneys remaining therein, or subject to its order, stating in detail in what causes they are deposited, and in what causes payments have been made; and said account and the vouchers thereof shall be filed in the court."

This section is a re-enactment of a similar section of the act of 1817. It is apparent from the provisions of this section that congress was cognizant of the fact that clerks were constantly receiving and disbursing in their official capacity moneys in causes pending in court between private suitors. This is still more plainly shown by the provisions of the act of February 19, 1897 (29 Stat. 578, c. 265, § 3), which requires moneys which have remained in the registry of the court unclaimed for 10 years or longer to be deposited to the credit of the United States; and a similar provision is found in section 4545, Rev. St. U. S. It is obvious that the moneys here referred to are not the moneys of the United States. Moneys paid to the clerk in his individual capacity become a mere private trust, and are no more subject to congressional control, or the control of the court, than if he were not clerk. For more than a century the clerks of the circuit courts of the United States have been receiving and paying out the moneys of suitors in those courts in the usual and customary manner, and during that time neither the clerks nor the suitors nor the court ever dreamed that they were performing this service as private individuals, and were not officially responsible for the moneys they were receiving as such clerks. Under the provision of section 828 the

clerk is allowed "for receiving, keeping and paying out money in pursuance of any statute or the order of the court, one per centum on the amount so received, kept and paid," and this poundage has always been allowed to them on moneys received and paid out by them. Nothing short of legislation can change the law as established by more than 100 years of uniform and constant practice of the courts. The money sued for in this action was paid into court and received by the clerk in a "cause pending in said court," and it was the duty of the clerk to "forthwith" deposit the same as required by section 995. His failure to do so was a breach of the condition of his bond, for which the sureties are liable to the person suffering damage thereby.

A further contention of the plaintiff in error is that the money was not received by the clerk by virtue of his office. The answer set up a tender, before suit was brought, of the amount due on the bonds, and concluded in these words: "And now brings the said sum into court." The answer was filed with the clerk, and the money tendered therein deposited with the clerk, at the time the answer was filed. The defendant had an undoubted right to set up this defense, and to set it up in a manner to make it effectual. A plea of tender, not accompanied with the money tendered, is bad; and a tender of the money without a plea setting it up goes for nothing. To make its plea good, it was necessary, therefore, for the defendant to file its written answer setting up the tender, and to bring the money tendered into court, as was done. The defendant did not have to apply to the court for leave to bring the money into court any more than it had to apply to the court for leave to file its answer. The answer and the money were parts of one whole. Together they constituted a good plea of tender, which was the county's defense to the action. Neither was a defense without the other. The law gave the defendant the absolute right to do precisely what was done. If it was the duty of the clerk, acting in his official capacity, to file the written part of the answer, it was equally his official duty to receive and safely keep the money tendered with the answer, and which was an essential part of it. When a tender is pleaded, no previous leave of the court is necessary before bringing the money tendered into court. This has been the law from the earliest times. In 6 Bac. Abr. tit. "Tender and Bringing Money into Court," *444, it is said:

"Wherever a tender of money pleaded, and the debt is not discharged by the tender and a refusal, money may be brought into court without leave of the court; nay, the money tendered must, as hereafter will be shown, in such case be brought into court."

2 Rolle, Abr. 524; 12 Mod. 354; Ld. Raym. 83, 254, 643; 1 Barnard, 181.

It is clear, then, that the money was rightly paid into court, and that it was the duty of some officer of the court to receive and safely keep the same. Who was that officer? It certainly was not the judge, and it is equally clear that it was not the marshal. Under the law and practice of all the courts, state and federal, it was the official duty of the clerk to receive and safely keep this money. The

proposition is too plain to require any argument or authority, but we quote from a few cases on the subject.

In McDonald v. Atkins, 13 Neb. 568, 14 N. W. 532, suit was instituted on the bond of the clerk for money paid to him by the sheriff, collected on an execution issued in favor of the plaintiff, and which he had failed to account for. The court said:

"The point made by the defendant's counsel is that the money was not received by Vedder in his official capacity; in other words, that he had no authority as clerk to receive it. And so the court below held. No one can doubt, we think, that this ruling was in direct conflict with the general understanding of the legal profession of this state as to the duty of court clerks in the receipt and disbursement of money paid upon judgments from the first organization of our judicial system, through all its changes, down to the present time. Indeed, we doubt exceedingly that any one, especially a practicing lawyer, has ever supposed that upon the rendition of a money judgment the defendant could not prevent a further accumulation of costs and interest, and have a satisfaction legally entered of record, by at once paying to the clerk of the court the amount which it calls for. If he could not,—if clerks are really without authority to receive money on judgments in their custody,—then to whom, in the absence of the plaintiff and his attorney, could payment be legally made? While it is true that we have no statute which in express terms declares that the clerks of the several courts shall accept payment of judgments in their custody, it is very evident that the legislature contemplated and intended that they should do so. And, even in the absence of such provision, can it be doubted that a party against whom a money judgment is sought by action may, upon being summoned, pay the amount demanded 'into court,' and thereby prevent the making of any further costs? But how is it to be effected? In the case of inferior courts—those not of record, and unprovided with clerks—the payment can, of course, only be made to the judge or magistrate in person; but in courts of record, where all the steps taken in the progress of the case, from the commencement to the satisfaction of final judgment, are recorded and preserved, and where a clerk for the performance of this duty is specially provided, it is otherwise. In these courts payments of money are never made to the judge, but the uniform practice in this state has always been to make them to his clerk, to whose custody and care the files, records, and whatsoever else relates to cases in courts are confided. And this practice, so universal, although not positively directed by any act of the legislature, conflicts with none, and, as we have shown, is recognized by and in perfect harmony with several."

In State v. Morrison, 63 N. C. 508, the clerk of the court was appointed as special commissioner to sell a slave. The clerk, after making the sale and collecting the money, failed to pay it over, and suit was instituted on his bond as clerk, and the plea was set up that he received the money as commissioner, and not in his official capacity as clerk; but the court said:

"The statute authorizes the court to appoint the clerk or some other fit person to make sales, etc. When the person who is clerk is appointed, it is to be taken that he is appointed in his official capacity. Especially is this so when, in the order appointing him, he is designated as clerk. The clerk, then, and his sureties, are liable upon his official bond."

To the same effect is State v. Blair, 76 N. C. 78.

In Railroad Co. v. Gaulter, 165 Ill. 233, 46 N. E. 256, it was contended that "the interlocutory decree did not designate the clerk as depositary, nor order him to receive the money; and the argument is that he was, therefore, a mere depositary of the parties." But the court said, "That decree provided for the payment of the money into court, and it was paid by complainant and received by the clerk as

a fund of the court under that decree," and the clerk was held liable for the money in his official character as clerk.

In Re Finks (D. C.) 41 Fed. 383, the court, in answer to a contention similar to that made in this case, said:

"The payment of money into the registry of the court through the clerk as the servant and agent of the court, where there is a fund under the control of the court, and where there is no hand designated to receive it, has been in existence from the foundation of the courts, and is too firmly fixed to be successfully assailed as not being authorized by any act of congress, or rule of court prescribed in pursuance of an act of congress."

In Connole v. People, 46 Ill. App. 72, the court said:

"By the act relating to tender it is expressly provided that costs tendered may be brought into court, and, of course, in such cases the clerk would receive the same."

See Walters-Cates v. Wilkinson, 92 Iowa, 129, 60 N. W. 514; Billings v. Teeling, 40 Iowa, 607.

In State v. Watson, 38 Ark. 96, 101, the court said:

"It often happens in the progress of suits that money is brought into court, and placed in the custody of the clerk until disposed of by order of the court, and it would be unsafe to hold that the clerk and sureties are not responsible on his official bond for such moneys."

The contention that the relator has no right to maintain this action in the name of the United States upon his relation is without merit. Under the reformed procedure, which prescribes that the real party in interest must be plaintiff, it has been held that a suit on a bond given for the security of the public generally, and in which the state or other public corporation is the obligee, may be brought in the name of the person beneficially interested in the particular suit. Morgan v. Long, 29 Iowa, 434; Strunk v. Ocheltree, 11 Iowa, 158; State v. Fredericks, 8 Iowa, 553; Bessinger v. Dickerson, 20 Iowa, 260; Latham v. Brown, 16 Iowa, 118. Whether this is the rule under the Missouri Code we need not stop to inquire. In Murfree, Off. Bonds, § 323, it is said:

"It is usually provided in statutes authorizing official bonds to be required of state, county, or municipal officers that suits may be brought upon them in the name of the official obligee 'upon the relation' or 'to the use' of the party injured by the breach of the bond or interested in its enforcement. Whenever, however, this express provision is omitted by the statute itself, the deficiency is supplied by the construction given to such statute by the courts whenever a proper case for such a ruling is presented."

On this question we fully concur with the views of Judge Adams, who tried the case at the circuit. He said:

"It is held in the case of Corporation of Washington v. Young, 10 Wheat. 406, 6 L. Ed. 352, that no person can be authorized to use the name of another without his assent, given in fact or by legal intendment. It is my opinion that in imposing upon clerks of the circuit court the duties above alluded to, which so necessarily and vitally affect the interest of suitors in its courts, and in requiring from such clerk a bond for the faithful discharge of such duties, the United States, by necessary legal intendment, thereby consents to the use of its name by suitors wronged by official misconduct of the clerk, in a suit against the clerk or his sureties on his official bond. This implied authority or necessary legal intendment becomes the more apparent when it is considered that the clerk's office is an agency of the United States government, ordained and established for the use and convenience of its people.

The money intrusted to its clerk is, in a large sense, money which the government has undertaken to keep for its people. When, therefore, the clerk, by official misconduct, embezzles or misappropriates such money, even though perhaps the government may not be subjected to a suit for its recovery, it clearly owes a highly moral and meritorious obligation to the loser in the nature of a responsibility for the act of misconduct of its agent, and one which the national congress might regard as sufficient to move it to a private act for his relief." 93 Fed. 719.

Moreover, if there was a technical error in stating the name of the plaintiff, this court would not reverse the case for that reason, but would direct the substitution of the name of the proper plaintiff. McDonald v. Nebraska (at present term) 101 Fed. 171, and cases cited.

The judgment of the circuit court is affirmed.