The People of the State of Illinois for use of James Mitchell Hoyt and Emma Patten Hoyt, Appellants, v. Richard J. McGrath and Chicago Bonding & Surety Company, Appellees.

Gen. No. 22,619.

1. CLERKS OF COURTS, § 25*—*when recovery may be had on bond.* When money is paid into court by order of the court the clerk is the proper custodian and receives it by virtue of his office, and upon his failure to account therefor a recovery may be had on his official bond.

2. CLERKS OF COURTS, § 11*—*capacity in which money of litigants is received.* Money of litigants received by clerks of courts is received by them in their official and not in their private capacity.

3. CLERKS OF COURTS, § 25*—*when bond should be construed as undertaking to pay over money paid into court.* The bond of a clerk of court, conditioned upon the faithful performance of the duties of his office, should be construed as an undertaking to pay over to parties entitled thereto all moneys coming into his hands as an officer of court.

4. OFFICERS, § 52*—*when liable for loss of public funds.* A public officer holding public funds is responsible for a degree of care more than that of an ordinary bailee, and is not excused for the loss of such funds unless it is due to the act of God or to the public enemy.

5. OFFICERS, § 52*—*what is nature of obligation of public officer receiving money belonging to others.* Upon principle and considerations of public policy, the obligation of a public official receiving money belonging to others is the same with respect to private as to public funds.

DEVER, J., dissenting.

Appeal from the Circuit Court of Cook county; the Hon. EDWARD M. MANGAN, Judge, presiding. Heard in this court at the October term, 1916. Reversed and judgment here. Opinion filed February 19, 1917.

FRANK D. FULTON and EUGENE L. GAREY, for appellants; EARL JAMES GAREY, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

HARRY DE J. HARMAN and SABATH, STAFFORD & SABATH, for appellees; CHARLES B. STAFFORD, of counsel.

ALFRED S. AUSTRIAN, *amicus curiæ.*

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiffs are seeking, by an action on his bond, to recover $577.50 paid to the defendant Richard J. McGrath, clerk of the Superior Court of Cook county, in a proceeding in court. The defense was that the money was lost by the clerk without his fault. We are informed by counsel that other sums totaling about $22,000 have been deposited with the clerk, Mr. McGrath, under similar circumstances and lost.

The declaration alleges that in an action pending in the Superior Court, James Mitchell Hoyt and Emma Patten Hoyt paid into court $577.50 under the following order:

"that the clerk of this court accept the sum of five hundred seventy-seven dollars and fifty cents ($577.50), tendered herein by the defendants, and to hold the same until the further order of this court." It is alleged that Richard J. McGrath accepted this sum and receipted therefor as clerk of the Superior Court, and that thereafter, on November 4, 1914, it was ordered in said cause

"that the clerk of this court pay to defendants' counsel, E. L. Garey, the sum of $577.50, said sum being the amount heretofore paid into court by said defendants, and deposited with the clerk of this court, subject to further order of this court."

This order it is averred the defendant McGrath refused to comply with, wherefore the plaintiffs bring suit on his bond, which is conditioned that he shall "faithfully perform all the duties required of him by law," against him and the defendant Surety Company.

By appropriate pleas the defense was set up that the money was lost without the fault of Richard J. McGrath, by reason of the failure of the La Salle Street Trust & Savings Bank, in which he had deposited it after making inquiries which led him to believe that this was a safe banking institution. Plaintiffs moved to strike said pleas for insufficiency, but the court, being of the opinion that the pleas set forth a good defense, denied the motion, and plaintiffs elected to stand thereby.

The question, therefore, presented for our determination is whether the clerk of the court and his surety are liable in an action on his bond for the loss of money paid into court and deposited with him by order of court, when the loss is due to the failure of a bank in which he, in the exercise of ordinary care, has deposited it. The statutory obligations on the clerk material to this question are, that "the said clerks shall attend the sessions of their respective courts, preserve all the files and papers thereof, make, keep and preserve complete records of all the proceedings and determinations thereof, except in cases otherwise provided by law, and do and perform all other duties pertaining to their said offices, as may be required by law or the rules and orders of their courts respectively." Hurd's Ill. St. 1916, ch. 25, sec. 13 (J. & A. ¶ 2138). And in the same chapter, section 4 (J. & A. ¶ 2129), it is provided that the bond of the clerk of the court shall be conditioned "for the faithful performance of the duties of his office, and to pay over all moneys that may come to his hands by virtue of his office, to the parties entitled thereto, and to deliver up all moneys, papers, books, records, and other things appertaining to his office, whole, safe and undefaced, when lawfully required so to do."

We are in accord with the proposition that "when money is paid into court by order of the court, the

clerk is its proper custodian and receives it by vir-
tue of his office, and upon his failure to account there-
for a recovery may be had on his official bond." 6
Amer. & Eng. Encyc. of Law (2nd Ed.) 142. A large
number of sound decisions support this rule; among
those, perhaps as convincing as any, is *Howard v.
United States*, 184 U. S. 676, where Mr. Justice Har-
lan in the opinion of the court said:

"But it is suggested that, in the absence of a statute
distinctly so providing, the clerk was not entitled to
receive the money deposited in payment and satis-
faction of Stewart's claim. It is true that no statute
declares in words that a clerk may receive money
brought into court for the purposes of a pending suit.
But it is clear that Henry county was entitled to
bring into court and tender to its adversary the
amount it was willing to pay in satisfaction of his
claim. It cannot be that it was the duty of the judge
of the court himself to have received the money and
personally deposited it as required by law. No one
has ever supposed that a judge was under obligation
to perform such services. Who, then, was to receive
the money? Plainly it was the duty of the clerk, who
was the arm of the court, kept its records showing
money paid in by suitors or officers, and was under
bond conditioned that he would faithfully perform all
the duties of his office. He was allowed by statute
a commission 'for *receiving*, keeping and paying out
money in pursuance of any statute or order of court.'
Rev. Stat. sec. 828. It was well said by Judge Cald-
well, delivering the unanimous judgment of the Cir-
cuit Court of Appeals, that 'for more than a century
the clerks of the Circuit Courts of the United States
have been receiving and paying out the moneys of
suitors in those courts in the usual and customary
manner, and during that time neither the clerks nor
the suitors nor the court ever dreamed that they were
performing this service as private individuals, and
were not officially responsible for the moneys they
were receiving as such clerks.' "

Among many other cases in other jurisdictions so holding are: *In re Finks*, 41 Fed. 383; *Coleman v. Ormond*, 60 Ala. 328; *Walters-Cates v. Wilkinson*, 92 Iowa 129; *Bantley v. Baker*, 61 Neb. 92. This rule has also been stated in decisions in our own State, in *Hammer v. Kaufman*, 39 Ill. 87; *Doyle v. Teas*, 5 Ill. 202; *DeWolf v. Long*, 7 Ill. 679, and especially in the more recent case of *Baltimore & O. R. Co. v. Gaulter*, 165 Ill. 233. In this latter case, although the order for the payment of money did not designate the clerk as a depositary nor order him to receive the money, yet the court held that it was paid under a decree, was received by the clerk as a fund of the court, and became such a fund under the control of the court; and the opinion seems to recognize the rule to be that if the fund was received by the clerk by virtue of his office he was a guarantor of its safety.

It has long been the recognized practice in the courts of this State for the clerks to receive and pay out money of litigants. It cannot be seriously contended in the face of the overwhelming weight of authority that the clerks in so acting are acting merely in a private capacity. We are of the opinion that it is established beyond any controversy that clerks in receiving such funds receive and hold them in their official capacity.

We think it follows, as a corollary to the above rule, that a bond conditioned upon the faithful performance of the duties of the office should be construed as an undertaking to pay over to parties entitled thereto all moneys coming into the hands of the clerk as an officer of the court.

In 5 Cyc. 754, it is said: "If a bond is given under authority of a law, that which is not expressed but should have been incorporated is included in the bond, while that which is not required by law is excluded." This rule has been followed by our Supreme Court

in *Ramsay's Estate v. People,* 197 Ill. 572. In this case it was contended that the condition of the bond was simply the faithful performance of the warden's duties, and not to account for funds coming into his hands, but the bond was construed to include the obligation to account for funds, the court saying: "In other words, a public officer, when he executes a bond binding himself to perform the duties of his office, becomes insurer of the public funds coming into his hands, by virtue of the bond and the law which becomes a part of the bond." To the same effect is *Purcell v. Town of Bear Creek,* 138 Ill. 524. Citations might be made of decisions in other States, but our own court has settled the law in Illinois.

It is also settled by the overwhelming weight of authority that a public officer holding public funds is responsible for a degree of care more than that of an ordinary bailee, and is not excused for the loss of such funds unless it is due to the act of God or to the public enemy. The *Ramsay* case, above cited, is squarely in point, the court saying of the public officer:

"He is not relieved from liability, even though he is so unfortunate as to lose money deposited by him in a bank which he supposes to be solvent, but which turns out to be insolvent. In other words, he is not a mere bailee, and, therefore, cannot call upon the public to bear the loss. (Mechem's Public Offices and Officers, secs. 297-302, inclusive.)

"A public officer 'is liable upon his bond for the loss of public funds, deposited by him in a bank and lost through its failure, though the bank was reputed solvent, and such deposit was necessary for the safety of the funds.' (Mechem's Public Offices and Officers, sec. 302; *State v. Moore,* 74 Mo. 413; *United States v. Prescott,* 3 How. 578.)"

Other decisions in this state are *Thompson v. Board of Trustees,* 30 Ill. 99; *Oeltjen v. People,* 160 Ill. 409; *Swift v. Trustees of Schools,* 189 Ill. 584; *Ramsay's*

*Estate v. People,* 197 Ill. 594; *Trustees of Schools v. Cowden,* 240 Ill. 39; *Town of Cicero v. Hall,* 240 Ill. 160; *Town of Cicero v. Grisko,* 240 Ill. 220. See also, *County of Lake v. Westerfield,* 273 Ill. 124. Quotations from the opinions in these cases, and from a very large number which might be added, would only repeat the established rule which makes an officer receiving public funds a guarantor of their safety.

The foregoing principles have been supported and stated in so many cases as to make their determination virtually free from difficulty. The authorities are almost wholly in harmony thus far.

We now come to a 'suggestion upon which there is a sharp conflict in the decisions of the courts of other States. This suggestion is that there is an exception to the general rule of the liability of an officer, where the funds in his possession are private funds as distinguished from public funds. It is contended by counsel for the defendants, and was apparently the opinion of the trial court, that where pursuant to an order of court litigants pay money to the clerk, in the event of loss the clerk is not absolutely liable for such moneys, and can only be liable in the event that such loss is occasioned through his fault or negligence. *People ex rel. Nash v. Faulkner,* 107 N. Y. 477, is a decision supporting this view. It would seem from reading the opinion in this case that the court was inclined to the view that officials are not absolutely liable even for public moneys coming into their hands; however, the court was of the opinion that as the law did not provide the officer with a safe or other place of deposit for the private fund, it was left to his own good sense and judgment to determine how he should keep it, and that he should be responsible only for good faith and reasonable diligence in the care of the money. Other cases so holding are *Wilson v. People,* 19 Colo. 199; *Fairchild v. Hedges,* 14 Wash. 117.

Directly opposed to these cases we have the decisions in *Morgan v. Long,* 29 Iowa 434; *Wright & Co. v. Harris,* 31 Iowa 272; *Havens v. Lathene,* 75 N. C. 505; *State v. Gatzweiler,* 49 Mo. 17.

*Northern Pac. Ry. Co. v. Owens,* 86 Minn. 188, is a well-reasoned opinion, holding that there is no distinction between public and private funds in the hands of a public officer as to his liability therefor. In accord with this is *United States v. Griswold,* 9 Ariz. 304, 80 Pac. Rep. 317; also *State v. Powell,* 67 Mo. 395; *Lanham v. Dies* (Tex. Civ. App.), 98 S. W. Rep. 897, and *Phillips v. Lamar,* 27 Ga. 228. In the larger number of decisions the distinction between public and private funds is held to have no sound basis.

Upon principle we are unable to discern any reason for making any distinction between public and private funds. No reason lies in the source of the moneys, for, whether paid to public officers as taxes or as a deposit in a litigated case, the money comes from citizens under legal mandates; the citizen has no more choice as to the personnel of the officer in the one case than in the other; he pays involuntarily to an officer not of his selecting. Neither is there any difference inherent in the money itself; whether a public or private fund, the necessity for its safe-keeping is equally imperative. If we could imagine any different degree of necessity for safety, it would lie in the direction of greater care for private funds, on the ground that the individual would probably be less able than the public to incur loss. Neither should there be any difference in the degree of duty with reference to safety between one officer charged by law as to the custody and disposition of funds coming to him by virtue of his office, and any other officer under similar duties and obligations.

We hold that considerations of public policy lead to the conclusion that the obligation with respect to

private funds is the same as it is with respect to public funds; the character of the fund makes no difference. The strict measure of accountability must apply just as forcibly to private funds officials receive as to public funds. In the eye of the law, public and private property are equally sacred and entitled to the fullest obligation of official protection. Litigants in our courts are just as much entitled to the security flowing from the strictest responsibility of court officers as are individuals contributing to a public fund.

It might be added that private funds coming into the hands of a public official by virtue of his office, strictly speaking, cease to have the character of private funds, and are on a parity with any funds in the custody of the public, through its official representative.

From the above considerations it follows that the judgment of the Circuit Court should be reversed, and, as it appears that upon the facts admitted by the defendants in their affidavits of merits there is no defense in law to plaintiffs' claim, judgment for the amount due, that is, $577.50, is entered against the defendants in this court.

*Reversed and judgment here for $577.50.*

MR. JUSTICE DEVER dissents.